(Nos. 76284, 76352 cons.—

## THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ANTHONY ROBINSON, Appellant.

*Opinion filed September 21, 1995.*

Rita A. Fry, Public Defender, of Chicago (Lester Finkle, Assistant Public Defender, of counsel), for appellant.

Roland W. Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Terence M. Madsen and Arleen C. Anderson, Assistant Attorneys General, of Chicago, and Renee Goldfarb, Theodore Fotios Burtzos, Susan Schierl and William D.

Carroll, Assistant State's Attorneys, of counsel), for the People.

JUSTICE NICKELS delivered the opinion of the court:

Defendant, Anthony Robinson, was convicted of armed robbery (Ill. Rev. Stat. 1989, ch. 38, par. 18—2) and armed violence (Ill. Rev. Stat. 1989, ch. 38, par. 33A—2) following a jury trial in Cook County. At his sentencing hearing, the court adjudged defendant to be a habitual criminal and sentenced him to life imprisonment pursuant to the Habitual Criminal Act (Ill. Rev. Stat. 1989, ch. 38, par. 33B—1 *et seq.*). Defendant's conviction was affirmed by the appellate court. (No. 1—91—3239 (unpublished order under Supreme Court Rule 23).) The appellate court vacated defendant's life sentence, however, finding that the Habitual Criminal Act requires proof beyond a reasonable doubt and that the State failed to meet this burden. Both the State and the defendant filed separate petitions for leave to appeal. (145 Ill. 2d R. 315(a).) We granted both petitions and consolidated the appeals, with defendant proceeding as appellant.

Two issues are presented for review: first, whether the trial court erred in admitting evidence of collateral crimes in defendant's trial; and second, whether the State satisfied its burden of proving defendant should be sentenced to life imprisonment pursuant to the Habitual Criminal Act.

### Background

The following facts were presented at defendant's trial. Officer Donald Smith testified concerning the circumstances surrounding defendant's arrest. Officer Smith testified that he was patrolling in his marked police car when he came across the defendant walking alone. The officer testified that the defendant's general

physical appearance and the white hooded sweatshirt he was wearing matched a composite drawing of a wanted suspect.

Officer Smith testified that he asked the defendant for identification. The defendant identified himself as Anthony Robinson, but provided no identification. The officer further testified that the defendant claimed to have visited a nearby residence; however, an inquiry at that residence failed to verify defendant's identity. At this time, defendant agreed to accompany Officer Smith to the police station.

Officer Smith further testified concerning defendant's arrest. At the police station, Officer Smith contacted Detective Adeline Raducha by phone and told her that he had a man matching the composite. Officer Smith gave Detective Raducha the defendant's name and address and hung up. Moments later, Detective Raducha phoned back and told Officer Smith to hold the defendant. Officer Smith testified that he placed defendant under arrest at this time.

Detective Raducha testified that she called Officer Smith and told him to hold defendant because of her investigation relating to Millicent Morris. Morris had been previously arrested for attempting to use credit cards that were stolen during an attack on a woman named Elouise Law. At the time of Officer Smith's call, Morris was in the process of viewing photographs to identify the person from whom she had obtained the cards. After Morris identified a photograph of a man named Anthony Robinson, Detective Raducha phoned Officer Smith and told him to hold defendant.

Detective Raducha also testified that she interviewed defendant and received consent to search his automobile. Detective Raducha identified a knife she recovered from between the seats of defendant's car.

The victim, 56-year-old Lily Barber, testified concern-

ing the attack she suffered and her identification of the defendant. Barber testified that on March 16, 1990, she was returning to her home in the Chatham area of Chicago and parked her car in her garage. Barber testified that she was confronted by a man wearing a mask as she exited the garage through a side door. The man forced her into the garage and a struggle ensued. Barber testified that she pulled the mask from her attacker and saw his face from a distance of less than a foot.

Barber testified that her attacker then pulled out a switchblade knife, forced her to lie down, and removed the wallet from her pocket. Barber also testified that her attacker then pulled down her pants and threatened to have sex with her. Barber testified that the man left after she told him she had a bad disease and that a neighbor would return home soon.

Barber also testified concerning her identification of the defendant during a lineup at the police station. Barber testified she was able to identify defendant as her attacker from a lineup of four persons. Barber also identified the knife Detective Raducha recovered from defendant's car as the one used in the attack.

Millicent Morris testified concerning the circumstances of her arrest and her identification of the defendant. Morris testified that she was at her brother's home when a man came in and asked her if she wanted to use some stolen credit cards. When she attempted to use the cards at a nearby shoe store, she was arrested. At the police station, Morris identified defendant from his photograph as the person from whom she had obtained the credit cards. Morris further testified that she subsequently identified defendant in a lineup. The credit cards had been stolen from a woman named Elouise Law.

The State was allowed to present evidence concerning two other crimes on the basis of a pretrial ruling by

the judge. Prior to trial, the State filed a motion *in limine* seeking to use evidence of defendant's other crimes. In that motion, the State sought to use evidence of three attacks on women that took place in 1990, one attack that took place in 1984, and three attacks on women that occurred in 1977 and 1978. The State argued that the other crimes were relevant and admissible to prove defendant's identity and *modus operandi*.

Defense counsel argued that the crimes occurring in 1977 and 1978 were too remote to be admitted into evidence. Defense counsel also argued that the crimes occurring in 1990 were not similar enough to the charged crime to be probative under a theory of *modus operandi*. Defense counsel further objected to the introduction of any of the crimes occurring in 1990 because none involved an identification of the defendant or had resulted in a conviction. Defense counsel further argued that the cumulative prejudicial effect of admitting so many other crimes would prevent defendant from receiving a fair trial.

After extensive briefing and argument, the trial judge allowed the State to present evidence concerning only one of the 1977-78 crimes and one of the 1990 crimes. The trial judge reasoned that allowing the State to introduce all seven other crimes would be cumulatively prejudicial. The trial judge allowed the State to decide which two crimes it wished to present. However, the trial judge reserved ruling as to whether the two crimes selected would be sufficiently similar to the charged crime to be admissible at trial as evidence of *modus operandi*.

In accordance with this pretrial ruling, the State chose to present evidence concerning the attacks on Elouise Law and Louise Collins. Law testified, over defense counsel's objection, concerning an attack she suffered on March 23, 1990. Law testified that she was

returning to her home in the Chatham area of Chicago after visiting the hospital. As she exited the garage, someone hit her on the shoulder, causing her to fall. The assailant grabbed her purse, containing cash and credit cards, and ran away. Law testified that she could not identify the assailant. Law further testified that she received a phone call from the police later that day and she went to the police station where she identified her credit cards. These were the credit cards recovered from Millicent Morris.

Louise Collins also testified, over defense counsel's objection, concerning an attack she suffered in 1977. Collins testified that she resided in the Chatham area of Chicago and was returning to her home when she saw a man in the vestibule of her building. Collins testified that the man approached her with a knife and demanded her purse. Collins further testified that after complying with this request, the man forced her to remove her clothing and get on the floor. Collins then described how she escaped by stabbing the man with his own knife. Collins also testified that she identified the defendant as her attacker during a lineup that took place on January 20, 1978. Collins again identified defendant as her attacker in open court.

Following the trial, the jury found the defendant guilty of armed robbery and armed violence for the attack on Barber. At sentencing, the State sought to have the defendant adjudged a habitual criminal. The Habitual Criminal Act provides that a defendant who is convicted of a third qualifying offense shall be "adjudged" a habitual criminal and sentenced to life imprisonment. (Ill. Rev. Stat. 1989, ch. 38, pars. 33B—1(a), (e).) To this end, the State introduced certified copies of the records of defendant's 1978 and 1984 convictions for armed robbery. The State supported these convictions with a certified copy of defendant's jail rec-

ord from 1978, a certified copy of the indictment from the 1984 conviction, and a current presentence investigation report.

Defense counsel contested the validity of the 1984 conviction, claiming that conviction was not for armed robbery. The trial court ruled that the State had established *prima facie* evidence that defendant's 1984 conviction was for armed robbery through the certified copy of the record of defendant's conviction. The trial judge thereby sentenced defendant to life imprisonment pursuant to the Habitual Criminal Act.

On appeal, defendant argued that the trial court erred in admitting evidence of the attacks on Law and Collins. The appellate court rejected defendant's argument and affirmed defendant's conviction. However, the appellate court reversed defendant's life sentence. The appellate court determined that defendant's prior convictions must be proved beyond a reasonable doubt and that the State failed to meet this burden. We address each issue in turn.

I

We first address whether the trial court erred in admitting evidence of defendant's other crimes. Generally, evidence of other crimes is inadmissible where that evidence is relevant solely to establish a defendant's criminal propensity. (*People v. Lindgren* (1980), 79 Ill. 2d 129, 137.) This general rule is premised on the belief that "[s]uch evidence overpersuades the jury, which might convict the defendant only because it feels he or she is a bad person deserving punishment." (*Lindgren*, 79 Ill. 2d at 137.) However, evidence of other crimes is admissible where relevant for any purpose other than to show the propensity to commit crime. (*People v. Phillips* (1989), 127 Ill. 2d 499, 520; *People v. McDonald* (1975), 62 Ill. 2d 448, 455.) This court has recognized that other-crimes evidence may be relevant to prove *modus oper-*

*andi*, intent, identity, motive or absence of mistake. *People v. McKibbins* (1983), 96 Ill. 2d 176, 182.

Even where relevant for a permissible purpose, the trial judge must weigh the prejudicial effect of admitting the other-crimes evidence against its probative value. (*People v. Stewart* (1984), 105 Ill. 2d 22, 62.) The trial court should exclude the other-crimes evidence where the probative value of that evidence is substantially outweighed by the prejudicial effect on defendant's right to a fair trial. (*People v. Illgen* (1991), 145 Ill. 2d 353, 365.) The admissibility of other-crimes evidence rests within the sound discretion of the trial court. (*Illgen*, 145 Ill. 2d at 364.) As such, the decision of the trial court will not be overturned absent a clear abuse of discretion. *People v. Franklin* (1990), 135 Ill. 2d 78, 96.

Defendant requests that his conviction be reversed because the trial court made three errors regarding the other-crimes evidence. First, defendant claims that the trial court abused its discretion by allowing the State to present its choice of two of the other crimes. Second, defendant argues that the two crimes chosen by the State were not similar enough to the charged crime to be admissible to prove identity under a theory of *modus operandi*. Third, defendant argues that the other-crimes evidence that was admitted was overly detailed and prejudicial.

### A

Defendant notes that in the pretrial ruling, the trial court allowed the State to introduce its choice of two of the other crimes. Defendant argues that in this ruling, the trial court failed to independently weigh the probative value of this other-crimes evidence against its prejudicial effect. Instead of independently weighing the effect of the evidence, the defendant argues, the trial court abused its discretion by engaging in a compromise to placate both sides.

We find no abuse of discretion in the trial court's decision to allow the State to introduce only two of the eight other crimes. During argument, defense counsel specifically objected to introduction of so many other crimes on grounds that "the cumulative effect" would prejudice the defendant. Under such circumstances, we find it entirely proper for the trial court to have considered the incremental probative value for each additional other crime against the cumulative prejudicial effect.

We also note that the trial judge did not abdicate his responsibility to individually analyze the probative value of the two crimes eventually selected by the State. In his ruling, the trial judge specifically found that admitting all of defendant's other crimes would be too prejudicial. However, the trial judge reserved ruling on the admissibility of the two other crimes to be selected by the State. The trial judge stated that he would review the specific other crimes selected by the State to determine their similarity to the charged crime. Thus, the trial judge's decision to admit only two of the other crimes, made after extensive briefing and argument, represents a reasoned exercise of discretion.

## B

The defendant also challenges the admissibility of the particular offenses selected by the State. Defendant argues that the trial court erred in admitting evidence concerning the attacks on Elouise Law and Louise Collins. Defendant reasons that neither crime was probative of defendant's identity because they did not share with the charged crime such common distinctive features as to earmark them as committed by the same person. Defendant also reasons that the attack on Collins, occurring in 1977, is too remote in time to be probative of identity in the present assault.

The State sought to admit the evidence of defen-

dant's other crimes to bolster its proof of his identity under a theory of *modus operandi*. In order to be relevant and admissible to prove identity, there must be a "strong and persuasive showing of similarity" between the charged crime and the other-crimes evidence. (*People v. Tate* (1981), 87 Ill. 2d 134, 141.) This high degree of similarity is necessary because proving identity under a theory of *modus operandi* involves reliance on an inference that a distinctive pattern of criminal activity earmarks the crimes as the work of a particular individual or group. (See M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 404.5, at 195 (5th ed. 1990).) Although there must be a persuasive showing of similarity, the "test is not one of exact, rigorous identity" (*Phillips*, 127 Ill. 2d at 520-21) and "some dissimilarity will always exist between independent crimes" (*People v. Taylor* (1984), 101 Ill. 2d 508, 521).

With these considerations in mind, we find no abuse of discretion in the decision to admit the attacks on Elouise Law and Louise Collins. The attack on Law is sufficiently similar to be probative on the issue of whether the defendant committed the attack on Barber. Both attacks occurred in the Chatham area of Chicago during the early evening within seven days of one another. In both attacks, the assailant covered his face, selected older women as his targets, and attacked them as they exited their garage.

These similarities are sufficient to justify the inference that Law and Barber were attacked by the same person. Although Law did not identify her attacker, the testimony of Millicent Morris strongly supports the position that the person who committed both crimes was the defendant. We therefore find that the trial court did not abuse its discretion in admitting evidence concerning the attack on Law.

The defendant's attack on Collins also shares strik-

ing similarities to the attack on Barber. Specifically, both attacks occurred during the early evening in the Chatham neighborhood of Chicago. In both attacks, the assailant surprised his victims as they were returning home. In both attacks, the assailant used a knife and attempted a sexual assault.

Defendant challenges the probative value of the attack on Collins on grounds that it is too remote in time. The attack on Collins occurred in 1977, some 13 years before the charged crime. However, this court has stated:

> "[T]he admissibility of other-crimes evidence should not, and indeed cannot, be controlled solely by the number of years that have elapsed between the prior offense and the crime charged. The decision whether to admit or exclude such evidence must be made on a case-by-case basis by the trial judge responsible for evaluating the probative value of the evidence." (*Illgen*, 145 Ill. 2d at 370.)

The State notes that the defendant was incarcerated for all but two years between crimes. Under the totality of the circumstances of this case, the trial court's decision did not constitute an abuse of discretion.

### C

Last, defendant argues that the trial court erred in allowing the State to go into detail concerning the circumstances of the other crimes. Specifically, defendant notes that the State elicited that Law was 81 years old and returning from the hospital when she was attacked. Defendant further objects to the testimony of Collins regarding what her attacker said to her. Defendant argues that this evidence was introduced solely to over-persuade the jury that defendant was a bad person deserving punishment.

This court has held that a trial court should carefully limit evidence of other crimes to that which is relevant for the purpose it was admitted. (*People v. Bartall* (1983), 98 Ill. 2d 294.) In this way, the trial court can

limit prejudice to the defendant and prevent a "mini-trial" on collateral issues. (See *McKibbins*, 96 Ill. 2d at 186.) However, defendant's trial attorney failed to object to the testimony he now challenges. As such, the issue is waived. (*People v. Enoch* (1988), 122 Ill. 2d 176.) We may review an alleged error not properly preserved where "the evidence is closely balanced or the error is of such magnitude that the commission thereof denies the accused a fair and impartial trial or sentencing hearing." (*People v. Young* (1989), 128 Ill. 2d 1, 47; 134 Ill. 2d R. 615(a).) In light of the persuasive identification testimony presented, the isolated comments at issue could not have affected the fairness of defendant's trial. We therefore decline to review this issue as plain error.

## II

Defendant was convicted on the basis of the evidence adduced at his trial. The State then sought to sentence defendant pursuant to the Habitual Criminal Act (Ill. Rev. Stat. 1989, ch. 38, par. 33B—1 *et seq.*). Section 33B—1 of the Criminal Code of 1961 provides in part:

> "(a) Every person who has been twice convicted in any state or federal court of an offense that contains the same elements as an offense now classified in Illinois as a Class X felony, criminal sexual assault or first degree murder, and is thereafter convicted of a Class X felony, criminal sexual assault or first degree murder, committed after the 2 prior convictions, shall be adjudged an habitual criminal.

> * * *

> (e) Except when the death penalty is imposed, anyone adjudged an habitual criminal shall be sentenced to life imprisonment." (Ill. Rev. Stat. 1989, ch. 38, pars. 33B—1(a), (e).)

The Act also provides that a defendant is entitled to a hearing concerning this determination. Ill. Rev. Stat. 1989, ch. 38, par. 33B—2(a).

At defendant's sentencing hearing, the State intro-

duced certified copies of the records of defendant's 1978 and 1984 convictions for armed robbery to prove defendant's two previous qualifying convictions. The Habitual Criminal Act provides that such an authenticated copy of a record of conviction "shall be prima facie evidence of such former conviction." (Ill. Rev. Stat. 1989, ch. 38, par. 33B—2(b).) The State further supported these convictions with a certified copy of defendant's jail record from 1978, a certified copy of the indictment from the 1984 conviction, and a current presentence investigation report.

Defense counsel contested only the validity of the certified copy of the 1984 conviction. Defense counsel argued that the 1984 conviction was not for armed robbery (Ill. Rev. Stat. 1989, ch. 38, par. 18—2) but simple robbery (Ill. Rev. Stat. 1989, ch. 38, par. 18—1). Robbery is a Class 2 felony and therefore not a qualifying offense under the Habitual Criminal Act. (Ill. Rev. Stat. 1989, ch. 38, par. 33B—1(a).) Defense counsel did not deny that defendant was the Anthony Robinson identified in the certified records and submitted no evidence to support his argument regarding the inaccuracy of that conviction. Relying on the information before him, the trial judge sentenced defendant to natural life imprisonment pursuant to the Act.

Defendant appealed his life sentence. The appellate court, relying on *People v. Casey* (1948), 399 Ill. 374, and *People v. Williams* (1992), 149 Ill. 2d 467, determined that the Habitual Criminal Act requires a defendant's prior convictions be proved beyond a reasonable doubt. The appellate court further determined that the evidence offered by the State failed to satisfy this burden. Therefore, the appellate court reversed defendant's life sentence.

First, we determine the appropriate standard of proof that applies to a defendant's eligibility for sentenc-

ing under the Habitual Criminal Act. Second, we decide whether the State satisfied this burden.

A

The current version of the Habitual Criminal Act took effect in 1978. (See Pub. Act 80—1099, § 1, eff. February 1, 1978.) The present act is similar to previous versions in that it subjects a defendant to an enhanced sentence based on past convictions. This court has not directly commented on the standard of proof that applies under the present act. However, this court did construe an earlier version of the Habitual Criminal Act in *People v. Casey* (1948), 399 Ill. 374. Interpreting the Habitual Criminal Act as it then existed, this court determined in *Casey* that the State must prove a defendant's prior convictions beyond a reasonable doubt. *Casey*, 399 Ill. at 378-80.

Relying on the *Casey* interpretation of the earlier version of the Habitual Criminal Act, several appellate court decisions have required prior convictions be proved beyond a reasonable doubt under the present act. (See, *e.g.*, *People v. Mason* (1983), 119 Ill. App. 3d 516, 522; *People v. McNeil* (1984), 125 Ill. App. 3d 876, 883.) In the present case, the appellate court was buttressed in its conclusion that *Casey* remained viable based on this court's opinion in *People v. Williams* (1992), 149 Ill. 2d 467.

In *Williams*, the issue before the court was the proper standard of proof regarding a defendant's prior convictions admitted to enhance his sentence under the Class X sentencing provision. (See Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3(c)(8).) The defendants in *Williams* argued that their former convictions must be proved beyond a reasonable doubt, relying on *Casey*. The *Williams* court determined that the State bears no duty to formally prove a defendant's convictions at sentencing under the Class X provision. In so finding,

the *Williams* court distinguished sentencing under the Class X provision from the Habitual Criminal Act at issue in *Casey*.

The *Williams* court determined that proving a defendant's prior convictions beyond a reasonable doubt was not required under the reasoning set forth in *Casey*. The Habitual Criminal Act at issue in *Casey* required prior convictions be pleaded in the indictment and proved at a defendant's trial. As such, the *Casey* court was concerned with protecting the defendant's presumption of innocence:

> "In a prosecution under the Habitual Criminal Act, the defendant is clothed with the presumption of innocence and, as has been pointed out, this applies to the fact of his former conviction which, if proved, enhances the penalty. The mere proof of a record containing identity of name with that of the defendant on trial is not sufficient to overcome the presumption of innocence where the enhancement of the penalty depends upon the proof of such fact." (*Casey*, 399 Ill. at 379-80.)

The *Williams* court reasoned that because a defendant's prior convictions are introduced only at sentencing under the Class X provision, the presumption of innocence is not implicated and proof beyond a reasonable doubt is not required. *Williams*, 149 Ill. 2d at 483 ("[W]e find the point of *when* prior convictions are introduced, either at sentencing or at trial, to be determinative of any burden of proof the State may have" (emphasis in original)).

In finding that the State bears no burden to formally prove prior convictions under the Class X provision, the *Williams* court also distinguished certain evidentiary provisions of the Habitual Criminal Act which imply some standard of proof:

> "Section 33B—2 (Ill. Rev. Stat. 1985, ch. 38, par. 33B—2) is, for the most part, devoted entirely to the evidentiary procedures that apply when the State seeks to have a court impose a mandatory life sentence on a defendant.

Section 33B—2(a) provides in part that 'the prosecutor may file with the court a verified written statement signed by the State's Attorney concerning any former conviction of an offense set forth in Section 33B—1 rendered against the defendant.' (Ill. Rev. Stat. 1985, ch. 38, par. 33B—2(a).) Section 33B—2(b) provides in part that '[a] duly authenticated copy of the record of any alleged former conviction of an offense set forth in Section 33B—1 shall be prima facie evidence of such former conviction ***.' (Ill. Rev. Stat. 1985, ch. 38, par. 33B—2(b).) Moreover, section 33B—2(c) provides that '[a]ny claim that a *previous conviction offered by the prosecution* is not former conviction of an offense set forth in Section 33B—1 because of the existence of any exceptions described in this Act, is waived unless duly raised at the hearing on such conviction, or unless the *prosecution's proof* shows the existence of such exceptions described in this Act.' (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 38, par. 33B—2(c).) The Class X provision of the Unified Code simply provides no comparable evidentiary procedures. A defendant does not have to be 'adjudged' a Class X offender to be sentenced under the Class X provision." (*Williams*, 149 Ill. 2d at 480-81.)

The appellate court reasoned that these evidentiary provisions identified in *Williams* support the view that the Habitual Criminal Act requires proof beyond a reasonable doubt.

We agree with the analysis presented in *Williams*, determining that it is the point in the proceedings when the convictions are introduced that determines whether the reasonable doubt standard articulated in *Casey* applies. We also agree that sentencing under the Habitual Criminal Act is more formal than sentencing under the Class X provision and that some measure of proof is required. However, we do not agree that the nature of a habitual criminal sentencing hearing requires proof beyond a reasonable doubt. Instead, we find that the preponderance standard of proof more appropriately balances the interests affected at sentencing under the Act.

Unlike the Habitual Criminal Act at issue in *Casey*, the modern Habitual Criminal Act applies only at sentencing and does not involve the presumption of innocence. (Ill. Rev. Stat. 1991, ch. 38, par. 33B—2(a) ("A prior conviction shall not be alleged in the indictment, and no *** other disclosure of such conviction shall be presented to the court or the jury during the trial").) Therefore, the reasoning set forth in *Casey* does not support application of proof beyond a reasonable doubt under the present version of the Act.

Although sentencing under the Habitual Criminal Act is more formal than Class X sentencing, the formalities do not approach that of a trial where the reasonable doubt standard applies. In *People v. Levin* (1993), 157 Ill. 2d 138, we distinguished the formal nature of a trial from a sentencing hearing under the Act. In *Levin*, defendant argued that the formal nature of a Habitual Criminal Act sentencing hearing triggered double jeopardy protection. (See *Bullington v. Missouri* (1981), 451 U.S. 430, 68 L. Ed. 2d 270, 101 S. Ct. 1852 (finding that double jeopardy bars second attempt at obtaining death penalty because that determination resembles a trial on the issue of guilt).) This court determined that double jeopardy does not attach to a determination of habitual-criminal status. In so finding, this court rejected the argument that sentencing under the Act possessed the formalities of a trial:

"Under our [Habitual Criminal] Act, a defendant is not afforded the full panoply of due process rights which are necessarily afforded a criminal defendant at the evidentiary phase of trial. Those standards which, at trial, govern the admissibility of evidence and precisely define the manner in which the court and parties are to proceed are absent. The legislature has fashioned the habitual-criminal sentencing proceeding to be less formalized than a trial. Indeed, the paucity of due process protections at sentencing supports the conclusion that the legislature has deemed the defendant's interests at this stage of the

proceeding to warrant fewer of those protections than at trial." (*Levin*, 157 Ill. 2d at 153.)

Consistent with this view, we reject the requirement of proof beyond a reasonable doubt for sentencing under the Habitual Criminal Act.

The preponderance standard of proof better balances the interests affected at sentencing under the Act. Such a standard allows the sentencing judge the freedom necessary to make a sentencing determination within the parameters outlined by the legislature. (See *People v. La Pointe* (1981), 88 Ill. 2d 482, 496.) In addition, applying the preponderance standard of proof to sentencing under the Act presents no greater risk of factual error than is present in other contexts where prior convictions are used to enhance a defendant's sentence or determine an appropriate sentence within a specified range. (See *Williams*, 149 Ill. 2d at 490 (finding that the Unified Code of Corrections does not require formal proof of prior convictions admitted to enhance a defendant's sentence under the Class X provision); *People v. Adkins* (1968), 41 Ill. 2d 297, 301 (finding that trial judge may consider criminal conduct contained in presentence report in determining an appropriate sentence); see also Ill. Rev. Stat. 1989, ch. 38, pars. 1005—6—3(a)(1), 1005—6—4(c) (violation of probation based on criminal conduct must be proved by a preponderance of the evidence).) We therefore hold that a defendant's eligibility for sentencing under the Habitual Criminal Act must be proved by a preponderance of the evidence and not beyond a reasonable doubt.

We note the decision in *People v. Stewart* (1961), 23 Ill. 2d 161, adhered to the *Casey* rule even after amendments of the old version of the Habitual Criminal Act ended the practice of introducing past convictions during a defendant's trial. (See Ill. Rev. Stat. 1959, ch. 38, par. 603.3(a).) The *Stewart* court declined changing the reasonable doubt standard articulated in *Casey* because "the General Assembly enacted a comprehensive revi-

sion of the Habitual Criminal Act, but it made no attempt to alter the rule adopted in the *Casey case.*" *Stewart*, 23 Ill. 2d at 164.

We do not find this reasoning persuasive. The General Assembly did indeed alter the rule adopted in *Casey* by dramatically changing the complexion of the Habitual Criminal Act. As previously stated, the Habitual Criminal Act at issue in *Casey* involved alleging defendant's qualifying convictions in the indictment and proving them at trial. As such, a defendant was clothed with the presumption of innocence and entitled to the protection of proof beyond a reasonable doubt. However, in changing the Habitual Criminal Act to a sentencing provision, the General Assembly removed the very foundation underlying the *Casey* rule. We do not agree that such a change shows a desire to acquiesce to this court's prior interpretation of the Act.

### B

We next address whether the State satisfied its burden of proving defendant's eligibility for sentencing as a habitual criminal. At defendant's sentencing hearing, the State submitted certified copies of the records of defendant's 1978 and 1984 armed robbery convictions to prove defendant's qualifying convictions under the Act. The Act provides that such duly authenticated copies are *prima facie* evidence of such conviction. See Ill. Rev. Stat. 1989, ch. 38, par. 33B—2(b).

Defense counsel contested only the accuracy of the 1984 conviction, arguing that conviction was not for armed robbery. Defense counsel did not deny that defendant was the Anthony Robinson identified in the certified records. (See *People v. Davis* (1983), 95 Ill. 2d 1, 31 ("We adopt the general rule that identity of name gives rise to a rebuttable presumption of identity of person").) Defense counsel submitted no evidence to support his argument that the 1984 conviction was inaccurate.

In the criminal context, *prima facie* evidence is in the nature of a presumption, more accurately described as an instructed inference. (See M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 304.1, at 114-16 (5th ed. 1990).) *Prima facie* evidence may be defined as a quantum of evidence sufficient to satisfy the burden of production concerning a basic fact that allows an inference of a presumed fact. (See M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 302.8, at 102 (5th ed. 1990).) Where the burden of production is satisfied, the trier of fact is permitted but not required to find the presumed fact. See M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 304.1, at 115-16 (5th ed. 1990).

Even where the State satisfies the burden of production concerning a basic fact, a defendant bears no actual burden to produce evidence to prevent operation of the inference. However, where the State satisfies the burden of production concerning a basic fact, a defendant does face the risk of nonpersuasion concerning the presumed fact. As a practical matter, the risk of nonpersuasion is greatly increased where a defendant submits no evidence to prevent operation of the inference.

Defendant argues that in denying the accuracy of the 1984 conviction, he rebutted the *prima facie* evidence and therefore the State must come forward with additional evidence to satisfy the burden of persuasion. However, this is not so. Once the burden of production is satisfied, the judge is permitted but not required to find the burden of persuasion satisfied depending on the judge's consideration of all the evidence. The defendant's introduction of contradictory evidence does not diminish the *prima facie* evidence, but such evidence is considered by the trial judge in determining whether the State has satisfied the burden of persuasion.

Applying these principles, the Habitual Criminal

Act instructs that a certified copy of a record of conviction satisfies the State's burden of production regarding the fact of that conviction. Therefore, the State's introduction of the certified copy of the record of the 1984 conviction permitted but did not require the trial judge to find that the State had satisfied its burden of persuasion regarding the fact of the armed robbery conviction. Whether the State satisfied the burden of persuasion on this issue must be determined on the basis of all the evidence.

We have determined that the preponderance standard is the appropriate measure of the burden of persuasion that applies at sentencing under the Act. In order to establish that defendant's 1984 conviction was for armed robbery, the State submitted a certified copy of the record of the 1984 conviction, a certified copy of the indictment for that charge and a presentence investigation report indicating the conviction. Defendant submitted no evidence in addition to his denial of the accuracy of that conviction. In light of this evidence, we cannot say that the trial judge's determination that defendant is a habitual offender was manifestly erroneous.

## Conclusion

We hold that the trial judge properly admitted evidence of defendant's other crimes; therefore, his conviction was properly affirmed. We further hold that a defendant's eligibility for sentencing as a habitual criminal must be proved by a preponderance of the evidence. Last, we agree with the trial court's determination that defendant was eligible for a life sentence pursuant to the Habitual Criminal Act. For these reasons, the judgment of the appellate court is affirmed in part and reversed in part, and the judgment of the circuit court is affirmed.

*Appellate court affirmed in part*
*and reversed in part;*
*circuit court affirmed.*