THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALONZO BRYANT, Defendant-Appellant.

First District (4th Division)   No. 1—94—0399

Opinion filed March 21, 1996.

Rita A. Fry, Public Defender, of Chicago (Kim L. Sorrells, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Susan R. Schierl, and Sharon R. Arnold, Assistant State's Attorneys, of counsel), for the People.

JUSTICE THEIS delivered the opinion of the court:

Following a jury trial, the defendant, Alonzo Bryant, was found guilty of armed robbery. At sentencing, the trial court determined that he was an habitual criminal and sentenced him to natural life in prison. See 720 ILCS 5/33B—1 (West 1992). The principal issues presented for our review are: (1) whether the trial court's response to a jury note requesting all written reports entered as evidence by the defense constitutes reversible error; (2) whether allowing the State, under the Habitual Criminal Act (Act) (720 ILCS 5/33B—1 (West 1992)), to present verified written statements concerning the defendant's former convictions in cases transferred from juvenile court constitutes a violation of the separation of powers clause of the Illinois Constitution (Ill. Const. 1970, art. II, § 1); (3) whether the trial court erroneously determined that two of the defendant's convictions, resulting from guilty pleas entered in cases that had been transferred from juvenile court, qualified as one former conviction under the Act; and (4) whether the State sustained its burden of proving that the defendant was eligible for sentencing as an habitual criminal. For the reasons which follow, we conclude that the trial court did not commit reversible error by accurately responding to the jury's request. We further hold that no violation of the separation of powers doctrine occurred by virtue of the State's decision to present evidence of the defendant's convictions in cases originating in juvenile court. Also, the trial court properly considered the defendant's transferred cases in sentencing him as an habitual offender. Finally, we find that the State met its burden of establishing the defendant's eligibility to be sentenced as an habitual offender. The remaining issues raised by the defendant are controlled by the Illinois Supreme Court decision in *People v. Dunigan*, 165 Ill. 2d 235, 650 N.E.2d 1026 (1995).

At trial, the victim, Jennifer Artis, testified on behalf of the State. She stated that on December 3, 1990, at 10:30 p.m., the defendant accosted her as she walked towards her apartment building. She testified that the defendant pointed a gun at her and said, "Stop, lady, I'll kill you." Artis testified that another man approached her from behind and she attempted to hit him. At that point, Artis heard a gun fire and the defendant say, "Let go, lady." The defendant then grabbed her briefcase and purse and ran away. Later that night, Artis positively identified the defendant.

Melody Whitaker also testified on behalf of the State. She stated that she was returning home at about the same time as Artis. Whitaker testified that she saw the defendant and another man accost Artis and point a gun at her. She then left the parking lot and drove to a gas station where she called the police. Later, Whitaker identified the defendant as one of the individuals who robbed Artis.

Officer Frank Michalek testified that around 10:35 or 10:40 p.m. on December 3, 1990, he pursued a speeding car for about three blocks before it went out of control and struck a mailbox. As he ordered the occupants to exit the car, he heard a police radio broadcast describing two individuals involved in an armed robbery. The defendant fit the description of one of the individuals involved in the robbery. Upon searching the car, Officer Michalek discovered a briefcase, a purse, an envelope containing cash, a beeper, a .38-caliber gun with four live rounds and two empty casings. Artis later positively identified the briefcase, purse and envelope as hers.

Assistant State's Attorney Steven Krueger testified that on December 4, 1990, he met with the defendant. The defendant told Krueger that his codefendant, Sidney Horton, planned the robbery. The defendant further stated that Horton carried the gun, approached the victim and threatened to kill her if she did not give him her belongings.

Sidney Horton testified on behalf of the defense. His account of the robbery differed from that presented by the State. Horton stated that another man who had been riding in his car, Steve Spurgins, robbed Artis with him. He testified that the defendant had fallen asleep in the car before the robbery and did not awaken until the car crashed into the mailbox.

In rebuttal, the State presented the testimony of Steve Krueger, who interviewed Horton on December 4, 1990, and Officer Barry Williams, who was present during the interview. Both testified that Horton did not mention the name Steve Spurgins during the interview. Krueger testified that Horton told him that the defendant wanted to commit the robbery and Horton merely agreed to go along.

After closing arguments, the court gave the jury its instructions and the jury commenced deliberations. During deliberations, the jury wrote a note to the court asking to see "all written reports entered as evidence by the defense." Throughout the trial, the defendant had marked several exhibits for identification, including police reports, arrest reports, police-generated computer printouts and the State's felony review file folder. These exhibits were used to impeach witnesses and never were entered into evidence.

Counsel for the defendant suggested that the court instruct the jury that "[t]here are no reports of the defense in evidence, but you may consider any and all testimony concerning those reports." The State did not object to the defendant's proposed response. Nonetheless, the court found the defendant's proposed response too confusing and instead told the jury that "[t]here are no reports for the defense."

The jury rendered a verdict finding the defendant guilty of armed

robbery. Thereafter, the State petitioned the court to have the defendant sentenced under the Habitual Criminal Act.

During the habitual criminal sentencing hearing, the State presented seven witnesses and several exhibits to prove that the defendant had two prior convictions within a 20-year period as required by the statute. 720 ILCS 5/33B—1 (West 1992). The evidence presented by the State included certified copies of conviction for two cases stemming from armed robberies committed by the defendant in 1976, when he was 16 years old. The State also offered a transcript of the 1978 pleas relative to the 1976 indictments. Additionally, Officer Jude Evans and Officer John Rawski gave detailed testimony concerning the 1976 armed robberies. The defendant was sentenced to concurrent prison terms of four and six years for his 1976 offenses. The parties agree that these cases had been transferred from juvenile court to criminal court, where the defendant pleaded guilty.

At the sentencing hearing, the State also offered a certified statement of conviction for an armed robbery committed by the defendant in 1982. Officer Larry Neuman testified that on December 20, 1982, after leaving a currency exchange, the defendant attempted to rob him. Neuman stated that he and the defendant exchanged gunfire and the defendant had to be taken to the hospital. Neuman further testified that the defendant was charged with attempted murder and attempted armed robbery and sentenced to 15 years in prison. Assistant State's Attorney Robert Clifford testified that the defendant pleaded guilty to attempted murder and attempted armed robbery.

Finally, the State offered certified documents from the Illinois Department of Corrections indicating that the defendant had been paroled on April 3, 1981, August 26, 1982, and March 20, 1990, nine months before the armed robbery at issue here.

The trial court found that the two convictions based on the 1978 pleas qualified as the defendant's first conviction for purposes of the Habitual Criminal Act. The court also found that the attempted murder and attempted armed robbery convictions served as the defendant's second conviction. Finally, the court determined that the armed robbery of Artis constituted the defendant's third conviction, thereby satisfying the requirements for sentencing the defendant as an habitual criminal under the Act. The trial court sentenced the defendant to a term of natural life in the Illinois Department of Corrections. The defendant now appeals, challenging the manner in which the court responded to the jury's question during deliberations. He also challenges the constitutionality of the Habitual Criminal Act, as well as the constitutionality of its application in this case.

■ The defendant's first contention on appeal is that the trial

court erred in responding to the jury's request for all written reports of the defense in evidence. The defendant argues that the court should have instructed the jury that, although there were no reports for the defense in evidence, it could consider all testimony concerning those reports. He contends that the court's response essentially told the jury to disregard the defense presented, thereby denying him a fair trial. As such, the defendant asks this court to reverse his conviction and sentence and grant a new trial.

In response, the State maintains that the court correctly and concisely answered the jury's literal question and, therefore, no error occurred. We agree and find that the trial court did not abuse its discretion in responding to the jury's request as it did. See generally *People v. Briggman*, 21 Ill. App. 3d 747, 316 N.E.2d 121 (1974) (appellate court reviews a trial court's response to jury's request to review testimony according to an abuse of discretion standard).

We note that the trial court did not have discretion to grant the jury's request to review reports that were not in evidence. *People v. Williams*, 60 Ill. 2d 1, 322 N.E.2d 819 (1975), *rev'd on other grounds*, 66 Ill. 2d 551, 363 N.E.2d 838 (1977). We further note that "questions from the jury should be literally construed to mean just what they say." *Williams*, 60 Ill. 2d at 13, 322 N.E.2d at 826.

The trial court in this case accurately responded to the jury's question because there were no reports entered into evidence on behalf of the defendant. The court expressly found that defense counsel's suggested response would serve only to confuse the jury. The jury requested reports which were used to impeach witnesses during cross-examination. These documents were used to attack the credibility of witnesses and not for the truth of information contained within.

Additionally, the jury received proper instructions concerning the manner in which it should consider the testimony of the witnesses and the exhibits received by the court. In light of the instructions given, the nature of the jury's request and the accuracy of the court's response, we conclude no error occurred.

■ The defendant next contends that allowing the State to use his 1978 pleas as evidence of former convictions for purposes of the Habitual Criminal Act violates the separation of powers clause of the Illinois Constitution. Ill. Const. 1970, art. II, § 1. He argues that allowing the State to use such convictions unconstitutionally deprives the judiciary of its sentencing function. He claims that the State has too much power because it decided whether to seek a transfer of his juvenile cases, and it also decided whether to present evidence of the 1978 convictions for purposes of sentencing under the Act.

The separation of powers clause of the Illinois Constitution provides:

> "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, § 1.

This clause is not intended to produce a complete separation of the branches of government. Rather, it is meant to ensure that the entire power of two or more branches of government does not rest in the same hands. *People v. Inghram*, 118 Ill. 2d 140, 514 N.E.2d 977 (1987). In order to determine whether a given practice constitutes a violation of the separation of powers clause of the Illinois Constitution, we must examine the kind of power involved. See generally *People v. Taylor*, 102 Ill. 2d 201, 464 N.E.2d 1059 (1984).

It is axiomatic that the power to sentence rests with the judiciary. *People v. Davis*, 93 Ill. 2d 155, 442 N.E.2d 855 (1982). Nonetheless, "[t]he General Assembly has the power to enact laws governing judicial practices when the laws do not unduly infringe upon the inherent powers of the judiciary or conflict with a rule of this court." *People v. Youngbey*, 82 Ill. 2d 556, 560, 413 N.E.2d 416, 419 (1980).

Here, we are asked to determine whether the combined effect of the State's power to petition the juvenile court to transfer the defendant's case to criminal court and its power to present evidence of a particular former conviction during the habitual criminal sentencing hearing unduly infringes on the judiciary's sentencing power. We examine the significance of each action taken by the State in order to determine whether together they unduly infringe upon the judiciary.

The decision to permit the prosecution of the defendant as an adult was made by the court, not the State. Also, this decision was a matter of procedure, not jurisdiction. *People v. P.H.*, 145 Ill. 2d 209, 582 N.E.2d 700 (1991). The provision of the Juvenile Court Act of 1977 which permitted the defendant to be treated as an adult for his 1976 offenses provides:

> "(3) If a petition alleges commission by a minor 13 years of age or over of an act which constitutes a crime under the law of this State, and, on motion of the State's Attorney, a Juvenile Judge, designated by the Chief Judge of the Circuit to hear and determine such motions, after investigation and hearing but before commencement of the adjudicatory hearing, finds that it is not in the best interests of the minor or of the public to proceed under this Act, the court may enter an order permitting prosecution under the criminal laws." Ill. Rev. Stat. 1977, ch. 37, par. 702—7(3).

Under the Act, the juvenile court was required to weigh several

factors before deciding that the defendant should be tried as an adult. Also, the defendant did not have a constitutional or common law right to be prosecuted under the Juvenile Court Act. *P.H.*, 145 Ill. 2d at 223, 582 N.E.2d at 706. The transfer provision merely defined the applicability of the Juvenile Court Act. While it is true that the State filed a petition to have the case transferred, the juvenile court made the ultimate decision about whether the defendant should have been prosecuted as an adult. Therefore, we conclude that the provision which permitted the defendant's case to be transferred to the criminal court system, upon the State's petition, does not constitute an undue infringement upon the power of the judiciary. See *P.H.*, 145 Ill. 2d at 223-24, 582 N.E.2d at 706.

Recently, our supreme court addressed the question of whether the Habitual Criminal Act violates the separation of powers provision of the Illinois Constitution. *People v. Dunigan*, 165 Ill. 2d 235, 650 N.E.2d 1026 (1995). In *Dunigan*, the court initially noted that "it is not clear, from the language of the Act, that the State's Attorney has any discretion to choose when to invoke the Act." *Dunigan*, 165 Ill. 2d at 248-49, 650 N.E.2d at 1032. The court acknowledged that the Act states that " '*Every person* [whose felony convictions meet the eligibility requirements of the Act] *shall be adjudged an habitual criminal*.' " (Emphasis in original.) *Dunigan*, 165 Ill. 2d at 249, 650 N.E.2d at 1032, quoting Ill. Rev. Stat. 1991, ch. 38, par. 33B—1(a).

The court in *Dunigan* further ruminated that the Act does not appear to grant the State's Attorney any discretion to choose which defendants should be sentenced under the Act. The court then held that, even assuming that section 33B—2 permits the State to exercise discretion to invoke the Act, no violation of the separation of powers clause exists. The court reasoned that the power to petition the trial court to impose a particular sanction is not the power to sentence. *Dunigan*, 165 Ill. 2d 235, 650 N.E.2d 1026.

Moreover, the judiciary wields the ultimate power to decide whether there is sufficient proof of the defendant's former Class X felony convictions such that a natural life term is warranted under the Act. We conclude that the State's decision to petition the court to sentence the defendant as an habitual criminal does not offend the separation of powers clause of the Illinois Constitution. See *Dunigan*, 165 Ill. 2d 235, 650 N.E.2d 1026.

As our analysis has shown, individually, the State's power to petition the court for a transfer and the State's power to petition the court for a particular sentence do not violate the separation of powers clause of the Illinois Constitution. The defendant has failed to articulate how the State's decision to use evidence of a former convic-

tion in a case that was transferred from juvenile court unduly infringes on the judiciary's sentencing power. Thus, we are unpersuaded that the separation of powers clause is offended under the facts presented.

■ The defendant further contends that his sentence to natural life in prison constitutes an unconstitutional double enhancement because the trial court determined that his pleas in cases which were transferred from juvenile court constituted a former conviction for purposes of the Habitual Criminal Act. We find this argument to be without merit.

The Act unambiguously states that "[a]ny convictions" may be used as a former conviction under the habitual criminal statute. 720 ILCS 5/33B—1(c) (West 1992). This includes convictions obtained while a defendant was a juvenile. *People v. Banks*, 212 Ill. App. 3d 105, 569 N.E.2d 1388 (1991).

Furthermore, the provision of the Juvenile Court Act which allowed the defendant in this case to be treated as an adult was not an enhancement provision. *Banks*, 212 Ill. App. 3d at 108, 569 N.E.2d at 1390-91. The juvenile court judge had discretion to determine whether the defendant should have been prosecuted as an adult. Allowing the transfer was not based on any fact or element inherent in or necessarily related to the offense itself. *Banks*, 212 Ill. App. 3d at 108, 569 N.E.2d at 1391.

Additionally, the United States Supreme Court and our supreme court have recognized that habitual criminal statutes do not define new or independent criminal offenses. *Gryger v. Burke*, 334 U.S. 728, 92 L. Ed. 1683, 68 S. Ct. 1256 (1948); *People v. Williams*, 36 Ill. 2d 505, 224 N.E.2d 225 (1967). Rather, enactments like the Illinois Habitual Criminal Act merely prescribe the circumstances under which aggravating factors enhance the penalty imposed for the most recent offense. *Dunigan*, 165 Ill. 2d at 242, 650 N.E.2d at 1029. Because the transfer of the defendant's 1976 cases from juvenile court to criminal court did not constitute an enhancement, we find that the defendant's sentence under the Act does not amount to an unconstitutional double enhancement.

■ The defendant also maintains that his sentence should be vacated because the State failed to establish beyond a reasonable doubt that he should be sentenced as an habitual criminal. However, in *People v. Robinson*, 167 Ill. 2d 53, 656 N.E.2d 1090 (1995), our supreme court held that "a defendant's eligibility for sentencing under the Habitual Criminal Act must be proved by a preponderance of the evidence and not beyond a reasonable doubt." *Robinson*, 167 Ill. 2d at 73, 656 N.E.2d at 1099. Nevertheless, the defendant chal-

lenges the sufficiency of the evidence offered to show that he qualified as an habitual criminal under the Act.

At the sentencing hearing, the State presented certified copies of the defendant's convictions, including the conviction for the 1982 crimes. Officer Larry Neuman, the victim of the 1982 crimes, gave detailed testimony concerning the events that led to the defendant's indictments. Robert Clifford, an assistant State's Attorney in 1984, testified that the defendant pleaded guilty to two counts of attempted armed robbery and murder on June 24, 1984. Clifford stated that he wrote down the defendant's plea and that the defendant was sentenced to 15 years in prison. Finally, the State offered the presentence investigation report, which lists all of the defendant's convictions.

On appeal, the defendant argues that he rebutted the *prima facie* evidence presented by the State because he disputed the accuracy of the 1984 plea, claiming that he did not plead guilty to attempted murder. Also, at the hearing defense counsel commented that in certain cases, certified statements of conviction were found to be erroneous. However, the defendant did not present any evidence to support his claim of error, and on appeal he fails to acknowledge Clifford's testimony concerning his pleas.

Based on the evidence presented at the hearing, we find that the State satisfied its burden of production and established a *prima facie* case of the defendant's eligibility to be sentenced as an habitual criminal. See *Robinson*, 167 Ill. 2d at 74-76, 656 N.E.2d at 1099-1100. Where the burden of production is satisfied, the trier of fact is permitted, but not required, to find the presumed fact. *Robinson*, 167 Ill. 2d at 75, 656 N.E.2d at 1100. In light of the preponderance standard of proof espoused by *Robinson*, as well as the lack of evidence establishing the discrediting of the accuracy of the 1984 conviction, we cannot say that the trial court's determination that the defendant is an habitual criminal was manifestly erroneous. *Robinson*, 167 Ill. 2d 53, 656 N.E.2d 1090.

■ Finally, the remaining issues raised by the defendant are controlled by the Illinois Supreme Court decision in *People v. Dunigan*, 165 Ill. 2d 235, 650 N.E.2d 1026 (1995). On appeal, the defendant maintains that the Habitual Criminal Act violates due process and the eighth amendment to the United States Constitution because it requires a sentence of natural life in prison without regard to mitigating factors. He also contends that the 1980 amendment to the Act (Pub. Act 81—1270, eff. July 3, 1980) violates the single subject requirement contained in article IV, section 8(d), of the Illinois Constitution. In *Dunigan*, the Illinois Supreme Court upheld the

constitutionality of the Act, expressly rejecting these same arguments. *Dunigan*, 165 Ill. 2d at 245-56, 650 N.E.2d at 1031-35. As such, we find *Dunigan* controlling and find it unnecessary to address these arguments further. We affirm the defendant's conviction for armed robbery and sentence to natural life in prison.

Affirmed.

CAHILL and O'BRIEN, JJ., concur.