2020 IL App (1st) 190414

FIRST DISTRICT
SIXTH DIVISION
November 20, 2020

No. 1-19-0414

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 8690 |
| | ) | |
| DE'ANDRE WILLIAMS, | ) | Honorable |
| | ) | Charles P. Burns, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justice Connors and Justice Griffin concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, De'Andre Williams, was convicted of robbery and sentenced to nine years' imprisonment under section 5-4.5-95(b) of the Unified Code of Corrections (Code) (730 ILCS 5/5-4.5-95(b) (West 2016)). On appeal, defendant contends that his Class X sentence was error where he was only 17 years old when he committed one of the predicate offenses. For the following reasons, we vacate defendant's sentence and remand for a new sentencing hearing.

¶ 2                                    I. JURISDICTION

¶ 3    The trial court sentenced defendant on February 5, 2019, and denied his motion to reconsider sentence that same day. Defendant filed a notice of appeal on March 4, 2019.Accordingly, this court has jurisdiction pursuant to Article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, §6) and Rule 603 (eff. Feb. 6, 2013) and Rule 606 (eff. July 1, 2017), governing appeals from a final judgment of conviction in a criminal case entered below.

¶ 4                                    II. BACKGROUND

¶ 5     The evidence at trial established that on June 7, 2018, Chicago Police Officer Kenneth Galvin was working undercover in the area of 76th Street and Racine Avenue in Chicago, Illinois. He had in his possession $50 in prerecorded funds, including a $20 bill, two $10 bills, and two $5 bills. Around 11:30 a.m. or noon, Officer Galvin observed defendant and another person standing on the south side of 76th Street. Defendant yelled, "Yo" in Officer Galvin's direction, which the officer interpreted as defendant trying to get his attention. He approached defendant and asked him if he had the "hard," a street term for crack cocaine. Defendant stated that he "ain't got that," but he nodded in the direction of an alley across the street.

¶ 6     Officer Galvin went to the alley where he observed three men. After conversing with the men, Officer Galvin determined that they were not going to sell him narcotics. When Officer Galvin returned to 76th Street, he saw defendant talking with a woman. He asked defendant again if he knew anyone else who had crack cocaine. Williams again replied no, stating that "they won't let me bring anyone new over there." Officer Galvin decided to abort his attempt to buy narcotics and he walked back to his unmarked vehicle.

¶ 7     As he approached his vehicle, Officer Galvin noticed defendant and one of the men in the alley watching him. He walked past his car, and when he no longer saw them, he walked back to his car. As he walked, he saw defendant and the woman walking towards him. Defendant said, "Come on," and Officer Galvin followed defendant and the woman for a couple of blocks. Officer Galvin believed that defendant would take him somewhere to buy narcotics. Officers Pagan and Hampton followed in an unmarked surveillance vehicle.

¶ 8    On 77th Street, defendant and the woman walked up to the padlocked front door of a multi-unit building. They then walked into the adjacent alley, out of sight. Defendant came out of the alley and told Officer Galvin, "she got you," which the officer took to mean the woman would sell him narcotics. Defendant said he would remain outside the alley and act as a "look out."

¶ 9    Holding the $20 bill in his hand, Officer Galvin approached the woman and saw that she had something in her hand. As the officer held out the $20 bill in exchange for the narcotics, defendant suddenly came up from behind and grabbed Officer Galvin with his forearm. Defendant had the officer in a headlock, applying "a tremendous amount of pressure against his neck." The woman grabbed the $20 bill from Officer Galvin's hand and started going through his pockets. Officer Pagan, after losing sight of everyone and counting to 10, drove into the alley where she saw defendant holding Officer Galvin by his neck. She exited her vehicle, pointing a gun at defendant. After a struggle, Officer Pagan and another officer brought defendant to the ground and arrested him. The woman fled and was never apprehended. Officer Galvin's marked $20 bill was recovered nearby in the alley.

¶ 10    The jury found defendant guilty of robbery and aggravated battery. Defendant filed a motion for a new trial which the trial court denied. The trial court also inquired into defendant's claim that his counsel was ineffective, but subsequently found that none of his claims were meritorious.

¶ 11    At defendant's sentencing, the State advised the court of defendant's mandatory Class X sentencing, based on his prior conviction of robbery in 2014, and his 2013 burglary conviction. Defense counsel acknowledged defendant's eligibility for Class X sentencing but argued, in light of defendant's youth and difficult upbringing, that he receive the minimum sentence of six years'

imprisonment. Noting that at the time defendant committed these offenses, he was on Mandatory Supervised Release after serving a five year sentence for an earlier robbery conviction, the trial court believed it was "necessary for defendant to be punished for his actions of this repeated pattern." The court was "concerned about the violence here" and found that defendant "was a danger to the community." However, the court also believed that defendant "can make corrections in his life" and did not "want to throw him away." The trial court sentenced defendant to nine years' imprisonment. After the trial court denied defendant's motion to reconsider his sentence, he filed this appeal.

¶ 12                                    III. ANALYSIS

¶ 13    Defendant was sentenced pursuant to section 5-4.5-95(b) of the Code, which mandates Class X sentencing if defendant had been convicted of two prior Class 2 or greater class felonies. See 730 ILCS 5/5-4.5-95(b) (West 2016).Defendant argues that he was subject to mandatory Class X sentencing in error, where one of his prior convictions did not qualify as a predicate conviction under the statute. Defendant acknowledges that he forfeited review of this issue, since he did not object or raise the issue before the trial court. This court, however, may review defendant's claim as plain error if "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and affected the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). The imposition of an unauthorized sentence may be reviewed as second prong plain error because such a sentence affects defendant's substantial rights. *People v. Hicks*, 181 Ill. 2d 541, 545 (1998).

But first, we determine whether any error occurred. *Piatkowski*, 225 Ill. 2d at 565. Whether defendant's prior convictions constitute qualifying offenses for purposes of mandatory Class X sentencing is a question of statutory construction that we review *de novo*. *People v. Baskerville*, 2012 IL 111056, ¶ 18.

¶ 14    Section 5-4.5-95(b) provides:

> "When a defendant over the age of 21 years, is convicted of a Class 1 or Class 2 felony, after having twice been convicted in any state or federal court of an offense that contains the same elements as an offense now (the date the Class 1 or Class 2 felony was committed) classified in Illinois as a Class 2 or greater Class felony and those charges are separately brought and tried and arise out of different series of acts, that defendant shall be sentenced as a Class X offender." 730 ILCS 5/5-4.5-95(b) (West 2016).

The State presented evidence of defendant's 2014 conviction of robbery, and his 2013 conviction for burglary, as qualifying convictions for a mandatory Class X sentence under the statute. Defendant argues that his 2013 conviction of burglary, an offense he committed when he was 17 years old, does not count as a qualifying offense. As support, he cites the recent case of *People v. Miles*, 2020 IL App (1st) 180736.

¶ 15    In *Miles*, the defendant was convicted of burglary that occurred on June 9, 2016, and sentenced as a Class X offender pursuant to the statute. One of the qualifying felony convictions the State used was a 2006 conviction for aggravated vehicular hijacking with a firearm and armed robbery committed when the defendant was 15 years old. *Id.* ¶ 3. The defendant pointed out that in 2013, the legislature amended section 5-120 of the Juvenile Court Act so that a 15-year-old who committed armed robbery would now be excluded from adult court jurisdiction. *Id.* ¶ 6. Also, in

2016 the legislature amended section 5-130 of the Juvenile Court Act to remove aggravated vehicular hijacking with a firearm from the list of offenses that disqualified a defendant from juvenile court jurisdiction. *Id.* The defendant argued that due to these amendments that took effect after his 2006 conviction, his 2006 armed robbery conviction is not "'an offense now [on June 9, 2016] classified in Illinois as a Class 2 or greater Class felony,'" but instead would have been resolved in 2016 through delinquency proceedings in juvenile court. *Id.* ¶ 7.

¶ 16    The court in *Miles* agreed, finding that the language of section 5-4.5-95(b) is clear and unambiguous, and that the proper focus of the provision is "'on the elements of the prior offense.'" *Id.* ¶ 10 quoting *People v. Foreman*, 2019 IL App (3d) 160334, ¶ 46. With that focus in mind, the court found that the defendant's 2006 conviction of aggravated vehicular hijacking with a firearm and armed robbery was not the same as an offense now classified as a Class 2 or greater Class felony, because "had it been committed on June 9, 2016, [it] would have been resolved with delinquency proceedings in juvenile court rather than criminal proceedings." *Id.* ¶¶ 10-11.

¶ 17    The State, however, argues that the convictions referenced in section 5-4.5-95(b) make no distinction between convictions of juveniles in criminal court and the convictions of adults. The State contends that defendant was properly convicted of burglary in 2013 when he was 17 years old, and since burglary is presently an offense classified as a Class 2 or greater Class felony, his prior conviction should qualify as a predicate offense for Class X sentencing pursuant to section 5-4.5-95(b). As support, the State relies primarily on *Fitzsimmons v. Norgle*, 104 Ill. 2d 369 (1984), *People v. Bryant*, 278 Ill. App. 3d 578 (1996), and *People v. Banks*, 212 Ill. App. 3d 105 (1991).

¶ 18    In *Fitzsimmons*, the defendant pled guilty to burglary and the State argued that since he had a prior conviction of burglary within 10 years of his recent burglary conviction, he was not

eligible for probation. *Fitzsimmons*, 104 Ill. 2d at 371-2. The trial court, however, ruled that because the prior burglary conviction occurred when the defendant was a juvenile, it was not the type of conviction contemplated by the statute as prohibiting probation. *Id.* at 372. The supreme court looked at the general definition of conviction in both the Criminal Code of 1961 and the Unified Code of Corrections, and found that "[n]o distinction is drawn between convictions rendered while the defendant was a juvenile and those which occur after the defendant is no longer subject to the authority of the juvenile court." *Id.* It held that the defendant's conviction in criminal court as a juvenile is "a conviction within 10 years of the second offense," and therefore the trial court erred in sentencing him to probation. *Id.* at 373.

¶ 19    In both *Bryant* and *Banks*, the defendant was found to be a habitual criminal pursuant to the Habitual Criminal Act (now codified as 730 ILCS 5/5-4.5-95(a) (West 2016)). The statute provided, in relevant part, that a defendant who had been "twice convicted in any state or federal court of an offense that contains the same elements as an offense now classified in Illinois as a Class X felony***" be adjudged a habitual criminal. *Id.* Both defendants argued that their habitual criminal adjudications constituted error because they committed the underlying crimes when they were juveniles. *Banks*, 212 Ill. App. 3d at 106; *Bryant*, 278 Ill. App. 3d at 586. This court rejected their argument, finding that the statute referred to any former convictions, with no indication that "criminal convictions obtained while the defendant is a minor should be treated any differently than criminal convictions of an adult." *Banks*, 212 Ill. App. 3d at 107; see also *Bryant*, 278 Ill. App. 3d at 586 (finding that the defendant's argument was without merit because the statute referenced "'[a]ny convictions'").

¶ 20    *Fitzsimmons*, *Banks* and *Bryant*, however, were decided before the amendment to section 5-120 of the Juvenile Court Act went into effect. This amendment vested the juvenile court with exclusive jurisdiction over a defendant who, like defendant here, was 17 years old when he committed burglary. See Pub. Act 98-61 (eff. Jan 1, 2014) (amending 705 ILCS 405/5-120 (West 2016)). As the court in *Miles* noted, the amendment provided some indication that the legislature intended to treat minors who commit certain crimes differently from adults charged with those crimes. *Miles*, 2020 IL App (1st) 180736, ¶ 21. The amendment, and the corresponding indication of the legislature's intent, were not present when *Fitzsimmons*, *Banks*, and *Bryant* were decided. As such, there was nothing for the court in those cases to consider that would have made the defendants' prior offenses, if presently charged, subject to juvenile delinquency proceedings rather than criminal proceedings. Unlike the case here and in *Miles*, the offenses committed by the defendants in *Fitzsimmons*, *Bryant*, and *Banks* as juveniles would still have been subject to criminal proceedings at the time they committed their most recent offenses as adults. We agree with *Miles* that these cases "do not dictate a decision in the instant case." *Id.*

¶ 21    Defendant here was properly convicted of burglary in criminal court when he was 17 years old, but a 2014 amendment to the Juvenile Court Act has since given the juvenile court exclusive jurisdiction over 17-year-old defendants charged with burglary. As *Miles* instructs, we look at the elements of his prior conviction as of the date defendant committed his current offense. *Id.* ¶ 11. On the date he committed the present offense, June 7, 2018, defendant's 2013 burglary conviction would have been resolved in delinquency proceedings rather than criminal court proceedings, and his predicate offense would have been a juvenile adjudication instead of a Class 2 or greater Class felony conviction. Section 5-4.5-95(b) is silent as to whether an adjudication in juvenile court is a

conviction under the provision. "In the absence of a statute expressly defining a juvenile adjudication as a conviction, Illinois courts have consistently held that juvenile adjudications do not constitute convictions." *People v. Taylor*, 221 Ill. 2d 157, 176 (2006).Following *Miles*, we find that defendant's prior burglary conviction is not "'an offense now *** classified in Illinois as a Class 2 or greater Class felony' and, therefore, is not a qualifying offense for Class X sentencing." *Miles*, 2020 IL App (1st) 180736, ¶ 11.

¶ 22    The State contends that if we find defendant's 2013 burglary conviction cannot be used as a qualifying conviction for Class X sentencing, we should affirm his sentence of nine years' imprisonment because defendant was eligible for a Class 2 extended term sentence of up to 14 years based on his 2014 robbery conviction. Although defendant's sentence falls within the extended-term sentencing range for a Class 2 felony, we believe the better course is to vacate his Class X sentence and remand the cause for resentencing as a Class 2 offender. See *Miles*, 2020 IL App (1st) 180736, ¶ 23; *People v. Hall*, 2014 IL App (1st) 122868, ¶ 15.

¶ 23                                        IV. CONCLUSION

¶ 24    For the foregoing reasons, we vacate defendant's Class X sentence and remand for resentencing as a Class 2 offender.

¶ 25    Sentence vacated; cause remanded for further proceedings.

**No. 1-19-0414**

| | |
|---|---|
| **Cite as:** | *People v. Williams*, 2020 IL App (1st) 190414 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-CR-8690; the Hon. Charles P. Burns, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, and Ian R. Jackson, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, and Mari R. Hatzenbuehler, Assistant State's Attorneys, of counsel), for the People. |