2-00-0201

No. 2--00--0201

IN THE 

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court 

OF ILLINOIS, ) of Kane County.

)

Plaintiff-Appellee, ) 

) No. 98--CF--0165

v. ) 

) 

JERRY BOSTON, JR., ) Honorable 

) Philip L. DiMarzio,

Defendant-Appellant. ) Judge, Presiding.

 

JUSTICE CALLUM delivered the opinion of the court:

Following a jury trial, defendant, Jerry Boston, Jr., was convicted of armed robbery (720 ILCS 5/18--2(a)(1) (West 2000)).  The trial court adjudged defendant a habitual criminal and sentenced him to life imprisonment.  Defendant appeals, arguing that (1) the court erred in admitting into evidence a knife found near the crime scene; and (2) the mandatory life sentence provisions of the Habitual Criminal Act (720 ILCS 5/33B--1 
et seq.
 (West 2000)) are unconstitutional under 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).  We affirm.

BACKGROUND

Following is a summary of the relevant testimony. On the morning of January 24, 1998, Judy Brownfield was working alone at the Reader's Haven bookstore in Elgin.  A man came in and said he was looking for a book about trees.  Brownfield led him to the reference area.  When she turned her back on him to walk toward the front of the store, she felt something hard pressed against her back.  The man grabbed her around the shoulders and then forced his arm against her throat.  Out of the corner of her eye, Brownfield saw a knife.  The man said, "don't move or I will kill you," and then placed the knife against Brownfield's throat.  He asked where the money was kept, and Brownfield said that it was in the other room.  The man led her to the front of the store.

Brownfield opened the register and then dropped to the ground.  She heard the man at the register, and the man then dropped to the ground and asked where the rest of the money was.  Brownfield mentioned her purse, and the man told her to take the money out.  He held the knife on her while she took the money out.  The man instructed Brownfield not to move and then left the store.

Brownfield stayed on the floor for a moment and then ran to the front door.  She saw a police van parked at a stoplight.  She told the officer in the van that she had been robbed.  A short while later, a squad car arrived at the store.  The officers had defendant with them, and Brownfield identified him as the perpetrator.  Brownfield also identified defendant in court.  According to Brownfield, approximately $80 had been taken from her purse and between $60 and $80 had been taken from the register.  Her throat, neck, and shoulder were hurt during the robbery, and she received cuts on her hands.  The knife caused the cuts.

During her testimony, Brownfield identified People's exhibit No. 12 as the knife used in the attack.  She testified that the knife appeared to be in the same condition, although part of the blade had become discolored.  On cross-examination, she acknowledged that she could not be positive that People's exhibit No. 12 was the knife used in the attack.  Brownfield also identified a Post-It note with her handwriting on it as one that had been attached to money in the cash register.  This Post-It note was recovered from defendant's pants pocket when he was apprehended.

Alice Kramer, an animal-control officer with the Elgin police department, testified that, at approximately 11:46 a.m. on January 24, 1998, her van was at a stoplight in front of Reader's Haven.  She observed a black male come out of the store, look in her direction, and walk hurriedly up the street.  A few seconds later, a woman ran out of the store and yelled that she had been robbed. Kramer asked her if she had been robbed by the man who had just left the store.  The woman answered "yes," and Kramer radioed the information to the communications center.  

Shortly thereafter, an Elgin police officer brought defendant to Reader's Haven, and Kramer identified him as the person she had seen exiting the store.  Defendant's coat was different, but Kramer was sure that defendant was the same person she had seen earlier.  Kramer identified defendant in the courtroom.  A tan coat was found in a yard in the 800 block of South Liberty Street, and Kramer identified it as the one defendant had been wearing when he left the store. Kramer also identified People's exhibit No. 12 as a knife that was found near the crime scene.  

Kenneth Miller testified that, shortly before noon on January 24, 1998, he pulled his car into the parking lot of Ray's Restaurant.  He parked at the back of the lot, near Liberty Street.  He found a knife in the parking lot and took it into the restaurant, thinking it might belong to the restaurant.  He gave the knife to the restaurant owner.  Miller identified People's exhibit No. 12 as the knife he found.  Miller had also been at Ray's the previous day at 3:30 p.m., and the knife was not in the parking lot then.  Faik Adili, the owner of Ray's Restaurant, testified that the knife did not belong to the restaurant.

Conan Fender, an Elgin patrol officer, testified that he heard a dispatch at 11:46 a.m. on January 24, 1998.  He went to the area of Reader's Haven and saw defendant duck between houses near 640 Illinois Street.  Fender could not catch up to defendant, but he saw him again in the backyards of houses on Liberty Street.  Fender and defendant made eye contact, and defendant began running.  Fender got out of his car and ran after defendant.  Other officers arrived in the area and took defendant into custody.  Fender then found a tan jacket in the front yard of 800 South Liberty.

Officer Dennis Hood of the Elgin police department also heard the dispatch at 11:46.  He went to the area of St. Charles and Dwight Streets and eventually saw Fender chasing defendant.  Hood pulled his car over near defendant, and defendant surrendered to him.  After Hood placed defendant in his squad car, defendant kept asking what "the woman" said.  Hood found $64.12 in defendant's right pants pocket and $41 in his left pants pocket.  Defendant's left pocket also contained a yellow Post-It note with writing on it.

Defendant denied robbing the Reader's Haven bookstore or even being near it on the date in question.  Defendant testified that he spent that morning looking for an apartment in Elgin.  He spoke to an individual at an apartment complex near Gifford and Villa Streets.  Defendant learned that an apartment might be available later that day.  He went to 501 Arlington Street to see if his wife was there because he wanted her to give him a ride to Chicago.  He jogged toward 501 Arlington Street.  Upon arriving, he noticed that her car was not there.  Defendant then jogged toward St. Charles Street.  Shortly thereafter, the police stopped defendant and placed him in handcuffs.  When asked why he had jogged instead of walked, defendant replied, "That was really no hurry, I didn't see anything wrong with jogging."  He then reiterated that, because he did not see anything wrong with jogging, he just decided to do it.  He denied having a Post-It note in his pocket.

ANALYSIS

I

Defendant first argues that the court erred in admitting the knife.  According to defendant, the State did not show that People's exhibit No. 12 was the knife used in the crime or that defendant ever owned the knife.  Defendant contends that the admission of the knife was unduly prejudicial because it improperly suggested to the jury that defendant possessed a knife during the offense.  Thus, "[w]ithout the knife, the only evidence of the presence of a knife was by the victim, who was not able to observe the knife but could only testify as to feeling a sharp metal object."

Only relevant evidence is admissible, and evidence is relevant if it tends to make a fact of consequence either more or less probable than it would be without the evidence.  
People v. Johnson
, 215 Ill. App. 3d 713, 731 (1991).  However, evidence will be excluded if its probative value is substantially outweighed by unfair prejudice.  
Johnson
, 215 Ill. App. 3d at 731.

Here, the trial court clearly did not err in admitting People's exhibit No. 12.  Brownfield identified the knife as the one defendant used in the attack.  Defendant relies on misrepresentations of the record to support his argument that he was unfairly prejudiced.  Defendant claims that the victim was not able to observe a knife.  Additionally, defendant claims that he was "never connected to [the knife] by observation or finger print evidence."  These statements are simply untrue.  Brownfield testified on both direct and redirect examination that defendant used a knife in the attack and that she saw a knife.  She specifically testified on redirect examination that she got a good look at the knife.  Further, she identified People's exhibit No. 12 as that knife.

Defendant relies on three cases, all of which are clearly distinguishable.  In 
People v. Berkman
, 307 Ill. 492 (1923), the defendant was accused of shooting John Rahn.  The supreme court held that the trial court erred in admitting a gun into evidence.  The gun was found near where the defendant himself was shot a month after the offense.  The court held that, absent evidence that defendant ever possessed the gun or that the gun was used in the shooting of Rahn, the admission of the gun was unduly prejudicial.  
Berkman
, 307 Ill. at 499-500.  

In 
People v. Johnson
, 215 Ill. App. 3d 713 (1991), the defendant was found guilty of first-degree murder.  The appellate court held that the trial court erred in allowing evidence that the victim had semen in her mouth because no evidence linked the semen to the defendant or to the crime.  
Johnson
, 215 Ill. App. 3d at 732.  

In 
People v. Malkiewicz
, 86 Ill. App. 3d 417 (1980), the defendant was convicted of rape, deviate sexual assault, and armed violence.  During the trial, the State presented evidence of several works of literature recovered from defendant's car during an inventory search.  The State limited the evidence to the titles of the books--"Death List," "Trapped and Tied Babysitters," "Tempting Teenagers," and "The Curious Nurse."  This court held that the trial court erred in allowing this evidence, absent a showing that the books belonged to defendant, that defendant had read the books, or that their content was somehow relevant to the defendant's state of mind or to the crime charged.  
Malkiewicz
, 86 Ill. App. 3d at 422.

The evidence in the above cases was excluded because the State did not connect it to the crime or to the defendant.  Here, the knife was connected to both.  Brownfield testified that defendant used a knife during the attack and that People's exhibit No. 12 was the knife.  Defendant's argument is utterly without merit, and we hold that the court properly admitted the evidence.

II 

Defendant's other contention is that his life sentence is unconstitutional under 
Apprendi
.  In 
Apprendi
, the Supreme Court held that, where factors other than prior convictions are used to increase the maximum sentence authorized for a crime, the State must submit those factors to the jury and prove them beyond a reasonable doubt.  

Here, defendant committed a Class X felony, for which the maximum prison sentence is 30 years.  See 730 ILCS 5/5--8--1(a)(3) (West 2000).  He was sentenced to life imprisonment, however, because the court adjudicated him a habitual criminal.  See 720 ILCS 5/33B--1(a), (e)
 (West 2000).  Section 33B--1 of the Habitual Criminal Act (720 ILCS 5/33B--1
 (West 2000)) provides as follows:

"(a) Every person who has been twice convicted in any state or federal court of an offense that contains the same elements as an offense now classified in Illinois as a Class X felony, criminal sexual assault, aggravated kidnapping or first degree murder, and is thereafter convicted of a Class X felony, criminal sexual assault or first degree murder, committed after the 2 prior convictions, shall be adjudged an habitual criminal.

(b) The 2 prior convictions need not have been for the same offense.

(c) Any convictions which result from or are connected with the same transaction, or result from offenses committed at the same time, shall be counted for the purposes of this Section as one conviction.

(d) This Article shall not apply unless each of the following requirements are satisfied:

(1) the third offense was committed after the effective date of this Act;

(2) the third offense was committed within 20 years of the date that judgment was entered on the first conviction, provided, however, that time spent in custody shall not be counted;

(3) the third offense was committed after conviction on the second offense;

(4) the second offense was committed after conviction on the first offense.

(e) Except when the death penalty is imposed, anyone adjudged an habitual criminal shall be sentenced to life imprisonment."

As we noted, 
Apprendi
 requires the submission to the fact finder and proof beyond a reasonable doubt of factors 
other
 
than
 
prio
r
 
convictions
 that increase the maximum sentence for an offense.  Pursuant to the Habitual Criminal Act, defendant's sentence was increased beyond the statutory maximum.  The factors that required the increase, however, were merely prior convictions.  Accordingly, 
Apprendi
 does not apply.

Although we have held that 
Apprendi
 does not apply to recidivist statutes (see 
People v. Watson
, 322 Ill. App. 3d 164 (2001)), we have not specifically addressed whether sentencing under the Habitual Criminal Act violates 
Apprendi
.  However, the Appellate  Court, Fifth District, recently addressed this issue in 
People v. Pickens
, 323 Ill. App. 3d 429 (2001).  Pickens was convicted of armed robbery and sentenced to life imprisonment based on the court's finding that his prior armed robbery and aggravated battery convictions rendered him a habitual criminal.  The Fifth District rejected defendant's 
Apprendi
 challenge to his sentence, noting that the sentence was enhanced only because of prior convictions
. 
Pickens
, 323 Ill. App. 3d at 435.  

We agree with the Fifth District.  Defendant was eligible for life imprisonment based on his prior Class X convictions, and 
Apprendi
 does not require the fact of those convictions to be submitted to a fact finder and proved beyond a reasonable doubt.

We affirm the judgment of the circuit court of Kane County.

Affirmed.

McLAREN and O'MALLEY, JJ., concur.