THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT JONES, Defendant-Appellant.

First District (3rd Division)    No. 1—01—0093

Opinion filed February 20, 2002.

234

Rita A. Fry, Public Defender, of Chicago (Marjorie F. Davis, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Annette Collins, and Ayesha Khan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WOLFSON delivered the opinion of the court:

If anything, Robert Jones was a model of consistency. The evidence in this case showed he used the same car with the same license plate when he committed three similar armed robberies within four hours in the same general area of Chicago.

He was tried for the first of the three armed robberies. The State was allowed to introduce evidence of the other two armed robberies in order to prove his identity in the charged offense.

Following a bench trial, the defendant was found guilty of the armed robbery of Elaine Ramos Rackos and sentenced to serve a term of natural life imprisonment as an habitual offender pursuant to the provisions of the Habitual Criminal Act (720 ILCS 5/33B—1 *et seq.* (West 1994)).

The defendant appeals, contending (1) the trial court erred in allowing the State to present evidence of other crimes, and (2) the mandatory life sentence provisions of the Habitual Criminal Act (the Act) (720 ILCS 5/33B—1 *et seq.* (West 1994)) are unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). We affirm.

## FACTS

Before trial, the trial court made a ruling that is the basis of the first issue on appeal: the trial court said, over defense objection, it would allow the State to present evidence the defendant used a white Ford Tempo with license plate number LWJ 457 in the uncharged armed robberies of Tim Sallee and Sutha Suesuntisook. The Ford Tempo was alleged to be the same car the defendant used four hours earlier in his armed robbery of Elaine Ramos Rackos. The robberies of Sallee and Suesuntisook would come in as other uncharged crimes evidence, relevant to the defendant's "identity and presence" at the scene of the robbery of Rackos.

The trial then began.

At trial, Elaine Ramos Rackos testified that on March 1, 1995, at about 8 p.m., she was walking to her car after shopping at the Target store located at 2656 North Elston. As she was putting her shopping bags into her car, she heard a car stop suddenly behind her. She turned and saw the defendant get out of his car and run toward her with a gun in his hand. Although the defendant had partially covered the gun with a "white-ish yellow towel," Rackos could see its barrel.

The defendant ran up to Rackos and pointed the gun at her stomach. He said, "Don't move. Don't do anything," and demanded money from her. Rackos said the defendant was right in her face and the parking lot was "very well lit."

Rackos opened her wallet and gave the defendant about $70. After she told the defendant she had no more money, the defendant ran to his car and drove away. As he drove away, Rackos looked at his car, specifically its license plate, then ran into Target and told the security people, "I was mugged in the parking lot." She kept repeating the license plate number over and over.

When police arrived at the Target store, Rackos gave them the license plate number "LWJ 457."

Rackos testified that one month later, on April 3, 1995, she went to Area 5 to view a lineup. When the curtains were opened, she recognized the defendant. "That is him," she said. She identified Robert Jones as the man who robbed her.

On cross-examination, Rackos insisted that she had seen a gun during the robbery. She said, "He had a gun underneath a towel." She denied telling the police she saw an "unknown, possible handgun barrel." She insisted she had told the police a man with a gun robbed her.

Rackos also denied she told the police the man who robbed her was "30 years old." She said she was not that specific. She said she told the police, "The man was in his 30's." And she denied she told the police the man who robbed her was exactly 6 feet tall. She recalled she told them "he was taller than me. *** He was more than 6 feet tall."

Rackos admitted she did not tell the police the man who robbed her had a scar or a defined mustache. Instead, she told them, "He had some sort of marks on his face" and "stubbles."

Tim Sallee drove fuel tankers for W. Smith Cartage Company. His job was to deliver gasoline to gas stations. On March 1, 1995, at about 11:55 p.m., roughly four hours after the Rackos robbery, Sallee was at the Gelanias Shell service station on the corner of Halsted and Wrightwood. He was unloading gasoline from his fuel tanker when a man he identified as the defendant Robert Jones robbed him at gunpoint.

Sallee testified the first time he saw the defendant was when the defendant drove into the gas station from Halsted. He was driving a Ford Tempo. He drove the Tempo past Sallee's fuel tanker, toward the gas station store, exited the gas station on Wrightwood, reentered the gas station from another driveway on Halsted, and finally stopped the car parallel to two fuel pumps next to Sallee's tanker. The defendant then exited the Tempo, stepped between the two fuel pumps, and asked Sallee for change.

Sallee told the defendant he had no change. The defendant replied, "I got something to show you," and showed Sallee a handgun. Sallee could see the grip, the chamber, and part of the barrel. Sallee said the defendant used a "dirty old yellow kitchen towel" to cover part of the handgun.

The defendant, pointing the handgun at Sallee's hip, said, "Give me the money." Before Sallee could respond, the defendant put his left hand on Sallee's right shoulder and turned him toward the fuel tanker. He forced Sallee to face the tanker and rest his hands on the rocker panel of the tanker's door.

The defendant, holding the gun in his right hand, used his left hand to frisk Sallee's coat pockets, front chest shirt pockets,

waistband, and front pants pockets. The defendant then reached into Sallee's left rear pants pocket and removed Sallee's wallet. He handed Sallee his wallet and ordered Sallee to open it. Sallee did.

Sallee gave the defendant $5 from his wallet. The defendant then asked "where the truck money was." Sallee responded, "We don't carry money on the trucks." The defendant replied, "Don't make me pop you." Sallee told him "if he pulled the trigger, he'd blow us both off the corner."

The defendant returned to the Ford Tempo and drove northbound on Halsted. Sallee said the license plate on the Tempo was "LWJ 457."

Sutha Suesuntisook had a home at 2742 North California. On March 2, 1995, at about 12:10 a.m., minutes after the Sallee robbery, Suesuntisook was parking her car in a three-car parking garage next to her home when a man in a white car pulled into her garage and blocked her in. She identified him as the defendant, Robert Jones. She testified the defendant got out of his car, pulled out a handgun, and demanded money from her.

Suesuntisook started to grab change from the coin tray in the car, but the defendant said, "Not that money." He demanded "real money." She gave the defendant a $5 bill and some singles, totaling about $10. Suesuntisook said the defendant then took her car and left behind his white car.

Detective Fernando E. Montilla, a Chicago police robbery specialist, testified he had been assigned to the robbery of Elaine Rackos Ramos on March 1, 1995. Detective Montilla said he recovered a beige Ford Tempo, license plate number LWJ 457, from the area where Suesuntisook said she was robbed. He also said defendant Robert Jones was a suspect in all three robberies and was identified by Rackos, Sallee, and Suesuntisook in three different lineups held on April 3, 1995.

On cross-examination, Detective Montilla said that the defendant's height was 6 feet 3 inches, that he weighed 180 pounds, and that he was 43 years old. Detective Montilla noted his arrest report showed the defendant had a scar on his left cheek.

The defendant called, in his defense, three witnesses—three police officers. First, Officer Barbara LeBron testified she responded to Tim Sallee's call for police to 2600 North Halsted. Sallee had reported he was held up. Officer LeBron said that during her interview of Sallee, he did not tell her the robber threatened to "pop him."

Second, Officer Annette Ruiz testified she was called to a gas station on North California to interview Sutha Suesuntisook. Suesuntisook had reported she was robbed. Officer Ruiz said Suesuntisook

could not remember whether the man who robbed her had any marks or scars on his face because everything happened so quickly.

Finally, Officer John Nowik testified he was called to the Target Store at 2656 North Elston to interview Elaine Ramos Rackos. Officer Nowik noted in his police report that Rackos told him she was robbed by a man, 30 years old, holding an "unknown possible handgun barrel." On cross-examination, Officer Nowik said he used the word "unknown" to signify Rackos did not know whether it was a handgun or a pistol. He added that in two other places in his police report he noted an armed robbery had occurred and that Rackos did not express any doubt that a gun was pointed at her during the course of her robbery.

After hearing closing arguments, the trial court found the defendant guilty of armed robbery. At the sentencing hearing, the State petitioned for imposition of a natural life sentence pursuant to the Habitual Criminal Act. The trial court concluded that under the Habitual Criminal Act, the appropriate sentence in this case was natural life, without the possibility of parole.

This appeal followed.

## DECISION

### Other Crimes Evidence

■ Other uncharged crimes evidence is admissible if relevant for any purpose other than to show the defendant's disposition or propensity to commit crime. *People v. Bedoya*, 325 Ill. App. 3d 926, 937, 758 N.E.2d 366 (2001), citing *People v. McKibbins*, 96 Ill. 2d 176, 182, 449 N.E.2d 821 (1983). Examples of relevant purpose include *modus operandi*, intent, identity, motive, or absence of mistake. *Bedoya*, 325 Ill. App. 3d at 937. The list is not exclusive.

■ Evidence is relevant if it has any tendency to make the existence of a fact that is of consequence in the case more probable or less probable than it would be without the evidence. *People v. Green*, 322 Ill. App. 3d 747, 757, 751 N.E.2d 10 (2001). When the trial court finds some relevance in the other crimes evidence, it must then conduct a balancing test. Relevant evidence should be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *People v. Stewart*, 105 Ill. 2d 22, 62, 473 N.E.2d 840 (1984).

The danger of presenting evidence to establish the defendant's propensity to commit a crime is that it "overpersuades the jury, which might convict the defendant only because it feels he or she is a bad person deserving punishment." *People v. Lindgren*, 79 Ill. 2d 129, 137, 402 N.E.2d 238 (1980).

■ The admissibility of other crimes evidence rests within the sound discretion of the trial court and will not be overturned absent a

clear abuse of discretion. *People v. Placek*, 184 Ill. 2d 370, 385, 704 N.E.2d 393 (1998). "[T]he trial court should not permit a 'mini-trial' of the other, uncharged offense, but should allow only that which is necessary to 'illuminate the issue for which the other crime was introduced.' " *Bedoya*, 325 Ill. App. 3d at 938, quoting *People v. Nunley*, 271 Ill. App. 3d 427, 432, 648 N.E.2d 1015 (1995).

The defendant contends the trial court erred by allowing the State to present evidence relating to the armed robberies of Tim Sallee and Sutha Suesuntisook. Specifically, the defendant contends the evidence was "admitted only to show Mr. Jones' propensity [to commit crimes] and to enhance the credibility of the complainant."

The State responds the court properly admitted the evidence of two other robberies because that evidence was relevant to establishing the defendant's identity under a *modus operandi* theory. We agree.

■ "The *modus operandi* exception has been described as circumstantial evidence of identity on the basis that crimes committed in a similar manner suggest a common author and strengthens the identification of the defendant." *People v. Shief*, 312 Ill. App. 3d 673, 681, 728 N.E.2d 638 (2000). Where such evidence is offered to prove *modus operandi*, "there must be a high degree of identity between the facts of the crime charged and the other offense in which the defendant was involved." *People v. Illgen*, 145 Ill. 2d 353, 372-73, 583 N.E.2d 515 (1991).

"While a persuasive showing of similarity must be made, the test is not one of ' "exact, rigorous identity," ' since ' "some dissimilarity will always exist between independent crimes." ' [Citations.]" *Sheif*, 312 Ill. App. 3d at 681. The offenses must generally share features that are highly distinctive, unique, or peculiar so as to trademark the acts as the handiwork of the same person. *Illgen*, 145 Ill. 2d at 373.

Rackos' identification of the defendant as her robber was the material issue in the case. During the cross-examination of Rackos, defense counsel challenged her identification of the defendant. Further, throughout opening and closing remarks, defense counsel questioned the strength of the State's evidence regarding the identity of the defendant and argued that, ultimately, the evidence was insufficient to show the defendant was Rackos' robber. See *People v. Bowman*, 227 Ill. App. 3d 607, 613, 592 N.E.2d 240 (1992) (the introduction of other crimes evidence is proper to bolster the defendant's identification when the identity of the defendant is at issue).

The question, then, is whether the record demonstrates the requisite similarity between the other crimes and the charged offense so as to trademark all the crimes as the handiwork of the defendant.

In *People v. Sheif*, 312 Ill. App. 3d 673, 728 N.E.2d 638 (2000), ev-

idence of the defendant's other crimes was relevant to establishing his identity under the *modus operandi* theory where, in a prosecution for armed robbery and attempted aggravated criminal sexual assault, both the charged offenses and the other crimes involved attacks on young women located in the same geographical area and occurring within the same two-week period; the offender in each case wore clothing strikingly similar to clothing recovered from the defendant's possession; the offender threatened to shoot each victim if she failed to comply with his demands of money and sex; and each victim identified the defendant as her assailant in a pretrial lineup and later at trial.

In *People v. de la Fuente*, 92 Ill. App. 3d 525, 533, 414 N.E.2d 1355 (1981), evidence of a robbery that occurred 15 minutes before the robbery charged was admissible as relevant to establish the defendant's identification, presence, intent, knowledge, and design, because the two robberies occurred within three blocks of another; both robberies involved the use of a small handgun as a bludgeon by the wielder; and the descriptions of the perpetrators of both robberies were nearly identical.

In *People v. Allen*, 28 Ill. App. 3d 815, 819, 329 N.E.2d 473 (1975), evidence of an attempted robbery was, in the prosecution for armed robbery, admissible on the issue of the defendant's identification and scheme or design where, among other things, both the attempted robbery and the crime charged occurred within about one hour of each other in contiguous suburbs; the witness to the attempted robbery and the victim of the crime charged described the weapon used as a pistol; the witness described the automobile used in the attempted robbery as being the same color and make as that stolen from the victim of the crime charged; and both the victim of the crime charged and the witness to the attempted robbery testified that the robbers asked the same question about the location of the highway before displaying a gun.

Similarly, here, each incident involved the armed robbery of a person located in the same geographical area; each incident occurred during a four-hour period—from 8 p.m. on March 1, 1995, to 12:10 a.m. on March 2, 1995—; each victim was initially approached while alone and near his or her vehicle; each victim gave the robber money after he demanded it in a similar way; each victim's description of the robber to the police immediately after the incidents, while somewhat different, represented a reasonably close description of the defendant; and each victim identified the defendant as the robber in a pretrial lineup and later at trial.

A feature we find distinctive in each offense is the robber's use of a light-colored Ford Tempo with the license plate number LWJ 457.

Both Rackos and Sallee testified to seeing the license plate number, and Detective Montilla testified to recovering a Ford Tempo with the same license plate number from the area where Suesuntisook said she was robbed.

While differences in the uncharged other crimes and the charged offenses exist—*e.g.*, the robber's gun was covered with a "dirty old yellow" kitchen towel or a "white-ish yellow" towel in the robberies of Rackos and Sallee but not Suesuntisook—, the similarities of these crimes, when viewed together, are sufficiently distinctive to support the inference the defendant was the robber in each case. See *People v. Lee*, 151 Ill. App. 3d 510, 519-20, 502 N.E.2d 399 (1986) (there was a substantial similarity between two shootings where both occurred within several blocks and within four hours of each other; both involved a small caliber gun; and both victims were shot in the head despite the fact they had cooperated with their assailant); and *People v. Bryan*, 159 Ill. App. 3d 46, 51-52, 511 N.E.2d 1289 (1987) (substantial similarities were found among three robberies where all took place on the same block, within the same 12-day period; the defendant used the same type of gun; he wore the same clothing; he gave similar commands; he escaped in the same direction; and he approached women who were initially alone).

■ We find the trial court did not abuse its discretion by allowing the State to present evidence of the other uncharged crimes for purposes of establishing the defendant's identity.

The defendant also contends: "If, however, this court should find some degree of testimony was permissible to show identity and presence, the State still improperly elicited from Sallee and Suesuntisook extraneous and prejudicial detail."

We disagree. Only enough evidence to establish the required similarities was presented. There was no unnecessary detail.

This was a bench trial. The trial court said it was allowing the other crimes evidence to show the defendant's "identity and presence," not his "propensity to commit the crime." Both were issues in the case. The trial court did not abuse its discretion.

## Sentencing

■ The defendant's final contention is that his life sentence is unconstitutional under *Apprendi*. In *Apprendi*, the Supreme Court held that any fact, other than a prior conviction, that increases the maximum penalty for a crime must be charged in an indictment, submitted to a fact finder, and proved beyond a reasonable doubt. *Apprendi*, 530 U.S. at 476, 147 L. Ed. 2d at 447, 120 S. Ct. at 2355.

The defendant committed a Class X felony, for which the maximum

prison sentence is 30 years. See 730 ILCS 5/5—8—1(a)(3) (West 2000). He was sentenced to life imprisonment, however, because the court found him to be an habitual criminal. See 720 ILCS 5/33B—1(a), (e) (West 2000). Section 33B—1 of the Habitual Criminal Act provides as follows:

" § 33B—1. (a) Every person who has been twice convicted in any state or federal court of an offense that contains the same elements as an offense now classified in Illinois as a Class X felony, criminal sexual assault, aggravated kidnapping or first degree murder, and is thereafter convicted of a Class X felony, criminal sexual assault or first degree murder, committed after the 2 prior convictions, shall be adjudged an habitual criminal.

(b) The 2 prior convictions need not have been for the same offense.

(c) Any convictions which result from or are connected with the same transaction, or result from offenses committed at the same time, shall be counted for the purposes of this Section as one conviction.

(d) This Article shall not apply unless each of the following requirements are satisfied:

(1) the third offense was committed after the effective date of this Act;

(2) the third offense was committed within 20 years of the date that judgment was entered on the first conviction, provided, however, that time spent in custody shall not be counted;

(3) the third offense was committed after conviction on the second offense;

(4) the second offense was committed after conviction on the first offense.

(e) Except when the death penalty is imposed, anyone adjudged an habitual criminal shall be sentenced to life imprisonment." 720 ILCS 5/33B—1 (West 2000).

Here, the defendant met all of the conditions for a mandatory natural life sentence under the Act, rather than the normal Class X sentencing range, which is from 6 to 30 years.

Recently, courts in the Fifth, Third, and Second Districts of the Illinois Appellate Court held the Act does not violate *Apprendi*. See *People v. Pickens*, 323 Ill. App. 3d 429, 752 N.E.2d 1195 (2001) (5th Dist.); *Morissette v. Briley*, 326 Ill. App. 3d 590, 592 (2001) (3rd Dist.); *People v. Boston*, 324 Ill. App. 3d 557, 562-63, 755 N.E.2d 1058 (2001) (2nd Dist.).

In their *Apprendi* analysis, the courts drew analogies between the recidivism provisions in section 33B—1 and the recidivism provisions of section 5—5—3(c)(8) (730 ILCS 5/5—5— 3(c)(8) (West 2000)).

Section 5—5—3(c)(8) requires a defendant to be sentenced as a Class X offender if he has been convicted of two Class 2 or greater felonies and then is convicted of a Class 1 or Class 2 felony. 730 ILCS 5/5—5—3(c)(8) (West 2000). Section 5—5—3(c)(8) does not violate *Apprendi*. *People v. Lathon*, 317 Ill. App. 3d 573, 740 N.E.2d 377 (2000); *People v. Dixon*, 319 Ill. App. 3d 881, 747 N.E.2d 1 (2001); *People v. Watson*, 322 Ill. App. 3d 164, 749 N.E.2d 1078 (2001).

Section 33B—1 is not unconstitutional under *Apprendi* because, like section 5—5—3(c)(8), "A provision that requires punishment enhancement based upon the existence of prior convictions does not run afoul of *Apprendi*." *Pickens*, 323 Ill. App. 3d at 434. Accord *Morissette*, 326 Ill. App. 3d at 592-93; *Boston*, 324 Ill. App. 3d at 563.

We concur with *Pickens*, *Morissette*, and *Boston*. We hold section 33B—1 does not violate *Apprendi*, and we affirm the trial court's sentencing order.

CONCLUSION

We affirm the trial court's judgment.

Affirmed.

HALL, P.J., and SOUTH, J., concur.