NO. 4-06-0355

Filed 7/28/08          IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
|       Plaintiff-Appellee, | ) | Circuit Court of |
|       v. | ) | Macon County |
| ISAAC CURRY, | ) | No. 05CF800 |
|       Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Scott B. Diamond, |
| | ) | Judge Presiding. |

_____

JUSTICE TURNER delivered the opinion of the court:

In March 2006, a jury found defendant, Isaac Curry, guilty of armed robbery.  In April 2006, the trial court adjudged defendant an habitual criminal and sentenced him to life in prison under the Habitual Criminal Act (Act) (720 ILCS 5/33B-1 through 33B-3 (West 2006)).

On appeal, defendant argues his natural-life sentence under the Act violates his rights to due process and to a jury trial.  We affirm.

I. BACKGROUND

In June 2005, the State charged defendant by amended information with the offense of armed robbery (720 ILCS 5/18-2(a) (West 2004)), alleging that defendant, while armed with a danger-ous weapon, a butcher knife, knowingly took United States cur-rency from the presence of Cynthia Summers and Diana Huddlestun by threatening the imminent use of force.  The State provided notice of its intention to seek a sentence of natural life in prison under the Act based on defendant's two prior Class X

felony convictions.  See 720 ILCS 5/33B-1 (West 2004).  Defendant pleaded not guilty.

In March 2006, defendant's jury trial commenced.  Cindi Summers testified she was working as an assistant manager at Walgreens in Decatur on May 29, 2005.  Diana Huddlestun was operating the cash register.  At approximately 9 p.m., Summers stated five or six customers were inside the store.  An announcement was made for the customers to bring their purchases to the register as the store was about to close.  Summers then locked the entrance door while the exit door remained open.

Thereafter, an African-American male appeared at the exit door and asked if he could buy a pack of cigarettes "real quick."  The male walked to the coolers to get something to drink and then headed to the front register.  At the checkout counter, the man presented a bottle of orange juice and two cigarette lighters.  Summers stated the man "grabbed [her] arm and forced [her] to the ground."  The man also pulled out a butcher knife and told her to get down on the ground or he would cut her.  While kneeling on the floor, Summers heard the cash register open.  The man told Huddlestun to get face down on the floor.  When she did, the male told them to count to 100.  Once they believed the man had left, Summers got up and locked the doors.  Huddlestun called 9-1-1.  After the police arrived, Summers determined $120 had been taken from the register.  Summers was unable to identify the individual because all she could remember was the knife.

Diana Huddlestun testified she worked as a cashier at the Walgreens on May 29, 2005. When the male who asked to enter the store walked inside, Huddlestun kept glancing at him because it was "unusual" for someone to come in and ask to buy a pack of cigarettes and then walk away since the cigarettes are behind the register. Huddlestun testified she scanned the individual's orange juice and two lighters. The male then grabbed Summers and told her to get face down on the floor or he would cut her. He then demanded Huddlestun open the register. She stated she was looking at his face because she "wanted to remember exactly what he looked like in case he hurt" them. After Summers went to the floor, the man pointed the knife at Huddlestun and told her to open the register or he would cut her. Huddlestun opened the register and stepped back. The man then grabbed the money and told Huddlestun to get on the floor. Huddlestun identified defendant as the man with the knife.

Huddlestun testified Decatur police detective Patrick Campbell came to her house on June 1, 2005, to show her a photo array. She identified a photo of defendant as the person who robbed the Walgreens. At a photo lineup, Huddlestun again identified defendant as the one who robbed her at knifepoint.

After the conclusion of the State's evidence, defendant exercised his constitutional right not to testify. See U.S. Const., amend. V. Following closing arguments, the jury found defendant guilty. In April 2006, defendant filed a motion for judgment of acquittal or, in the alternative, for a new trial,

which the trial court denied.

Defendant also filed a motion to bar application of section 33B-1 of the Act (720 ILCS 5/33B-1 (West 2006)), arguing sentencing him to life in prison as an habitual criminal would violate the United States and Illinois Constitutions. The State filed a notice upon conviction of its intention to pursue natural-life sentencing based on defendant's prior criminal convictions, those being the Class X felonies of armed robbery in Macon County case No. 95-CF-1025 and armed robbery in Macon County case No. 90-CF-68. The State attached certified copies of those convictions to the notice. In case No. 95-CF-1025, the State indicated defendant was sentenced to 20 years on the offense of armed robbery alleged to have been committed on October 14, 1995. In case No. 90-CF-68, defendant pleaded guilty to two counts of armed robbery that allegedly occurred on January 27, 1990, and was sentenced to nine years in prison.

The trial court denied defendant's motion to bar the application of section 33B-1. The court then adjudged defendant an habitual criminal and sentenced him to life in prison without the possibility of parole or mandatory supervised release. Defendant filed a postsentencing motion, which the court denied. This appeal followed.

## II. ANALYSIS

Defendant argues his natural-life sentence violates his constitutional rights to due process and to a jury trial because he was sentenced under section 33B-1 of the Act without a finding

- 4 -

by a jury beyond a reasonable doubt that his two prior armed-robbery convictions did not result from, and were not connected with, the same transaction.  We disagree.

"In general, the Habitual Criminal Act mandates the imposition of a natural-life sentence on a defendant convicted of three temporally separate Class X offenses, or other eligible serious felonies, within a 20-year period."  People v. Palmer, 218 Ill. 2d 148, 154-55, 843 N.E.2d 292, 296 (2006).  Specifically, section 33B-1 of the Act provides as follows:

> "(a) Every person who has been twice convicted in any state or federal court of an offense that contains the same elements as an offense now classified in Illinois as a Class X felony, criminal sexual assault, aggravated kidnapping[,] or first degree murder, and is thereafter convicted of a Class X felony, criminal sexual assault[,] or first degree murder, committed after the 2 prior convictions, shall be adjudged an habitual criminal.

> (b) The 2 prior convictions need not have been for the same offense.

> (c) Any convictions which result from or are connected with the same transaction, or result from offenses committed at the same time, shall be counted for the purposes of

this [s]ection as one conviction.

(d) This [a]rticle shall not apply unless each of the following requirements are satisfied:

(1) the third offense was committed after the effective date of this Act;

(2) the third offense was committed within 20 years of the date that judgment was entered on the first conviction, provided, however, that time spent in custody shall not be counted;

(3) the third offense was committed after conviction on the second offense;

(4) the second offense was committed after conviction on the first offense.

(e) Except when the death penalty is imposed, anyone adjudged an habitual criminal shall be sentenced to life imprisonment."

720 ILCS 5/33B-1 (West 2006).

Section 33B-2(a) of the Act provides that "unless the defendant admits [prior] conviction[s], the court shall hear and determine such issue, and shall make a written finding thereon."

720 ILCS 5/33B-2(a) (West 2006).  "A duly authenticated copy of the record of any alleged former conviction of an offense set forth in [s]ection 33B-1 shall be prima facie evidence of such former conviction."  720 ILCS 5/33B-2(b) (West 2006).  "The date that an offense was committed may be established by circumstantial evidence[,] such as a certified copy of the conviction and a presentence investigation report."  People v. Walton, 240 Ill. App. 3d 49, 57, 608 N.E.2d 59, 65 (1992).  The State has the burden of establishing the defendant's eligibility for sentencing as an habitual criminal by a preponderance of the evidence.  People v. Eaglin, 292 Ill. App. 3d 677, 682, 686 N.E.2d 695, 698 (1997), citing People v. Robinson, 167 Ill. 2d 53, 73, 656 N.E.2d 1090, 1099 (1995).

At the sentencing hearing, the State presented a certified copy of Macon County case No. 90-CF-68, wherein defendant pleaded guilty to two counts of armed robbery.  Count I pertained to victim William Handt, and count II pertained to victim Debbie Weltmer.  The offenses in both counts were committed on January 27, 1990, and involved defendant taking currency from the victims while armed with a knife.  In April 1990, the trial court sentenced defendant to concurrent terms of nine years in prison.

In Macon County case No. 95-CF-1025, defendant pleaded guilty to one count of armed robbery.  The offense was committed on October 14, 1995, and involved defendant taking money and food stamps from Rick Yutzy while armed with a wrench handle.  In

February 1996, the trial court sentenced defendant to 20 years in prison.

Defendant argues his life sentence violates the rule established in <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), and clarified in <u>Shepard v. United States</u>, 544 U.S. 13, 161 L. Ed. 2d 205, 125 S. Ct. 1254 (2005), because the trial court found by a preponderance of the evidence, not a jury beyond a reasonable doubt, that his two prior armed-robbery convictions did not result from, and were not connected with, the same transaction. See 720 ILCS 5/33B-1(c) (West 2006). Defendant concedes his prior convictions were not committed at the same time and notes the State's documents sufficiently established the number, timing, and sequence of his prior convictions. However, he contends the certified copies of his prior convictions did not furnish conclusive proof that those convictions arose from unrelated or unconnected transactions.

Initially, a short history on the pertinent case law is in order as to the enhancement of a sentence based on a defendant's conduct during the commission of the crime and any prior convictions. In <u>Almendarez-Torres v. United States</u>, 523 U.S. 224, 226, 140 L. Ed. 2d 350, 357, 118 S. Ct. 1219, 1222 (1998), the United States Supreme Court was confronted with a federal statute prescribing a maximum prison sentence of 2 years for an illegal-immigration offense but authorizing a 20-year maximum sentence if the defendant had a prior aggravated felony conviction. The defendant pleaded guilty to the indictment of being in

the United States after being deported, but the indictment did not mention his prior felony convictions.  Almendarez-Torres, 523 U.S. at 227, 140 L. Ed. 2d at 357, 118 S. Ct. at 1222-23.  The defendant argued he could not be sentenced in excess of the minimum because his indictment had not mentioned those prior convictions.  Almendarez-Torres, 523 U.S. at 227, 140 L. Ed. 2d at 357, 118 S. Ct. at 1222-23.  The district court disagreed and sentenced him to 85 months in prison.  Almendarez-Torres, 523 U.S. at 227, 140 L. Ed. 2d at 357, 118 S. Ct. at 1223.

The Supreme Court noted recidivism "is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence."  Almendarez-Torres, 523 U.S. at 243, 140 L. Ed. 2d at 368, 118 S. Ct. at 1230.  As recidivism does not relate to the commission of the offense, the Court concluded that "to hold that the Constitution requires that recidivism be deemed an 'element' of petitioner's offense would mark an abrupt departure from a longstanding tradition of treat-ing recidivism as 'go[ing] to the punishment only.'"  Almendarez-Torres, 523 U.S. at 244, 140 L. Ed. 2d at 368-69, 118 S. Ct. at 1231, quoting Graham v. West Virginia, 224 U.S. 616, 629, 56 L. Ed. 917, 923, 32 S. Ct. 583, 587-88 (1912).  As the statute in question "simply authorizes a court to increase the sentence for a recidivist," the Court found the Government was not required to include the defendant's prior convictions in the indictment. Almendarez-Torres, 523 U.S. at 226-27, 140 L. Ed. 2d at 357, 118 S. Ct. at 1222.

- 9 -

During its following term, the Supreme Court construed the federal carjacking statute providing for an enhanced sentence if serious bodily injury occurred during the commission of the offense in Jones v. United States, 526 U.S. 227, 143 L. Ed. 2d 311, 119 S. Ct. 1215 (1999). There, the defendant was charged with and found guilty of carjacking. Jones, 526 U.S. at 230, 143 L. Ed. 2d at 318, 119 S. Ct. at 1218. The issue of serious bodily harm was not alleged in the indictment or tried to the jury. Jones, 526 U.S. at 230-31, 143 L. Ed. 2d at 318, 119 S. Ct. at 1218. At the sentencing hearing, the district court found by a preponderance of the evidence that a victim had suffered serious bodily injury and sentenced defendant to 25 years in prison, which included a 10-year enhancement. Jones, 526 U.S. at 231, 143 L. Ed. 2d at 318, 119 S. Ct. at 1218.

The Supreme Court found "serious bodily harm" constituted an element of the offense that must be submitted to a jury for verdict. Jones, 526 U.S. at 239, 143 L. Ed. 2d at 324, 119 S. Ct. at 1222. The Jones majority rejected the dissenting justices' arguments that Almendarez-Torres "stood for the broad proposition that any fact increasing the maximum permissible punishment may be determined by a judge by a preponderance" and would therefore be dispositive of the issues before the Court. Jones, 526 U.S. at 249 n.10, 143 L Ed. 2d 330 n.10, 119 S. Ct. at 1227 n.10. Instead, the Court stated Almendarez-Torres "stands for the proposition that not every fact expanding a penalty range must be stated in a felony indictment, the precise holding being

- 10 -

that recidivism increasing the maximum penalty need not be so charged." Jones, 526 U.S. at 248, 143 L. Ed. 2d at 329, 119 S. Ct. at 1226-27. In noting the history of treating recidivism as a sentencing factor, the Court stated that "unlike virtually any other consideration used to enlarge the possible penalty for an offense ***, a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees." Jones, 526 U.S. at 249, 143 L. Ed. 2d at 329-30, 119 S. Ct. at 1227.

A year later in Apprendi, 530 U.S. at 469, 147 L. Ed. 2d at 442, 120 S. Ct. at 2351, the defendant in that case fired several shots into the home of an African-American family and later admitted being the shooter. During police questioning, he gave a statement, which he later retracted, that he fired the shots because of the family's race and that he did not want them in the neighborhood. Apprendi, 530 U.S. at 469, 147 L. Ed. 2d at 442, 120 S. Ct. at 2351. The defendant was charged with various offenses, but none of the counts mentioned the state hate-crime statute or alleged he acted with a racially biased purpose. Apprendi, 530 U.S. at 469, 147 L. Ed. 2d at 442, 120 S. Ct. at 2352. The defendant pleaded guilty to two counts of illegal possession of a firearm and bomb possession. Apprendi, 530 U.S. at 469-70, 147 L. Ed. 2d at 442, 120 S. Ct. at 2352. At an evidentiary hearing, the trial court found by a preponderance of the evidence that the defendant acted with a racially biased purpose and sentenced him to an enhanced 12-year term on the

firearm-possession counts.  <u>Apprendi</u>, 530 U.S. at 471, 147 L. Ed. 2d at 443, 120 S. Ct. at 2352.

The Supreme Court found the trial court's enhancement amounted to "an unacceptable departure from the jury tradition that is an indispensable part of our criminal justice system." <u>Apprendi</u>, 530 U.S. at 497, 147 L. Ed. 2d at 459, 120 S. Ct. at 2366.  The Court held the fifth and fourteenth amendments to the United States Constitution (U.S. Const., amends. V, XIV) required that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  <u>Apprendi</u>, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63.

The Supreme Court revisited issues raised by <u>Apprendi</u> in <u>Shepard</u>.  In that case, the defendant pleaded guilty to unlawful possession of a firearm by a felon.  <u>Shepard</u>, 544 U.S. at 16, 161 L. Ed. 2d at 211, 125 S. Ct. at 1257.  At the sentencing hearing, the government argued the defendant's sentence should be extended pursuant to the Armed Career Criminal Act of 1984 (ACCA) (18 U.S.C. §924(e) (2000)).  <u>Shepard</u>, 544 U.S. at 16, 161 L. Ed. 2d at 211-12, 125 S. Ct. at 1257.  Under federal law, the ACCA provided for extended prison terms for defendants who had been convicted of three prior serious drug offenses or violent felonies.  18 U.S.C. §924(e) (2000).  Under the ACCA, a burglary committed in an enclosed space or building, a so-called "generic burglary," qualified as a violent felony but a burglary

committed in a boat or motor vehicle did not.  <u>Shepard</u>, 544 U.S. at 15-16, 161 L. Ed. 2d at 211, 125 S. Ct. at 1257.  On four previous occasions, the defendant had pleaded guilty to burglary in Massachusetts, but the state statutes did not differentiate between generic burglary and burglary committed in a boat or motor vehicle.  <u>Shepard</u>, 544 U.S. at 17, 161 L. Ed. 2d at 212, 125 S. Ct. at 1258.

The Supreme Court stated the issue centered on "whether a sentencing court can look to police reports or complaint applications to determine whether an earlier guilty plea necessarily admitted, and supported a conviction for, generic burglary."  <u>Shepard</u>, 544 U.S. at 16, 161 L. Ed. 2d at 211, 125 S. Ct. at 1257.  Writing for a plurality of the Court, Justice Souter noted the record was silent on whether the defendant's prior convictions were generic burglaries as the defendant did not admit the generic fact in a plea agreement or recorded colloquy.  <u>Shepard</u>, 544 U.S. at 25, 161 L. Ed. 2d at 217, 125 S. Ct. at 1262.  Justice Souter continued by stating:

> "[T]he Sixth and Fourteenth Amendments guarantee a jury standing between a defendant and the power of the State, and they guarantee a jury's finding of any disputed fact essential to increase the ceiling of a potential sentence.  While the disputed fact here can be described as a fact about a prior conviction, it is too far removed from the

- 13 -

conclusive significance of a prior judicial

record, and too much like the findings sub-

ject to Jones and Apprendi, to say that

Almendarez-Torres clearly authorizes a judge

to resolve the dispute." Shepard, 544 U.S.

at 25, 161 L. Ed. 2d at 217, 125 S. Ct. at

1262.

The plurality concluded as follows:

"[E]nquiry under the ACCA to determine

whether a plea of guilty to burglary defined

by a nongeneric statute necessarily admitted

elements of the generic offense is limited to

the terms of the charging document, the terms

of a plea agreement or transcript of colloquy

between judge and defendant in which the

factual basis for the plea was confirmed by

the defendant, or to some comparable judicial

record of this information." Shepard, 544

U.S. at 26, 161 L. Ed. 2d at 218, 125 S. Ct.

at 1263.

Numerous Illinois courts have found section 33B-1

constitutional as it falls within the recidivism exception to the

rule set forth in Apprendi. See People v. Ligon, 365 Ill. App.

3d 109, 126, 847 N.E.2d 763, 769 (2006); People v. Allen, 335

Ill. App. 3d 773, 785, 780 N.E.2d 1133, 1143 (2002); People v.

Jones, 328 Ill. App. 3d 233, 243, 764 N.E.2d 1232, 1239-40

- 14 -

(2002). Illinois courts have also found the <u>Apprendi</u> recidivism exception remains valid after <u>Shepard</u>. See <u>People v. Johnson</u>, 372 Ill. App. 3d 772, 781, 867 N.E.2d 49, 56 (2007) (recidivism exception articulated in <u>Apprendi</u> remains viable after <u>Shepard</u>); <u>People v. Yancey</u>, 368 Ill. App. 3d 381, 393, 858 N.E.2d 454, 464 (2005); <u>Ligon</u>, 365 Ill. App. 3d at 127, 847 N.E.2d at 780.

Defendant argues section 33B-1(c) unconstitutionally increased his Class X felony sentence to one of mandatory life imprisonment based on facts that are, as in <u>Shepard</u>, "too far removed" from the fact of a prior conviction, <u>i.e.</u>, that his two prior convictions did not "result from" and are not "connected with" the same transaction. See 720 ILCS 5/33B-1(c) (West 2006). In support of his argument, defendant relies on the Seventh Circuit's decision in <u>United States v. Ngo</u>, 406 F.3d 839 (7th Cir. 2005).

There, a jury found the defendant guilty of (1) conspiracy to distribute and to possess with intent to distribute methamphetamine and (2) distributing methamphetamine. <u>Ngo</u>, 406 F.3d at 840. The presentence investigation recommended the defendant be sentenced as a career offender based on his two prior armed-robbery convictions. <u>Ngo</u>, 406 F.3d at 841. The defendant, however, argued he was not a career offender because his armed-robbery convictions were "related" and only counted as one prior conviction. <u>Ngo</u>, 406 F.3d at 841. The district court found the defendant's prior convictions were not "part of a common scheme or plan," thereby subjecting him to sentencing as a

- 15 -

career offender. Ngo, 406 F.3d at 841.

On appeal, the defendant argued the district court's finding that his prior convictions were unrelated "exceeded the judicial fact[-]finding exception for recidivism recognized in Almendarez-Torres [citation], and preserved in Apprendi." Ngo, 406 F.3d at 841. The Seventh Circuit acknowledged the Almendarez-Torres exception was still viable after Shepard but stated the exception "is quite narrow." Ngo, 406 F.3d at 842. The Seventh Circuit found the Shepard plurality "suggest[ed] that the recidivism exception exempts only those findings traceable to a prior judicial record of 'conclusive significance.'" Ngo, 406 F.3d at 842.

In finding the defendant a career offender, the district court had looked to the fact the robberies took place 10 days apart as well as to the type of establishment burglarized. The Seventh Circuit, however, concluded the district court's findings were "determined by resorting to sources of information without the 'conclusive significance' of a prior judicial record" and were not authorized by the Supreme Court's ruling in Almendarez-Torres. Ngo, 406 F.3d at 843. Accordingly, the defendant's sentence was in violation of the sixth amendment as it was "based upon impermissible fact[-]finding." Ngo, 406 F.3d at 844.

We find Ngo distinguishable from the facts presented in this case. Our supreme court has stated the Act requires convictions on "three temporally separate Class X offenses." Palmer,

218 Ill. 2d at 155, 843 N.E.2d at 296.  The Act states multiple convictions will only be counted as a single conviction if they "result from or are connected with the same transaction."  720 ILCS 5/33B-1(c) (West 2006).  The determination of whether the convictions are connected can be made from sources of information bearing the "conclusive significance of a prior judicial record." Shepard, 544 U.S. at 25, 161 L. Ed. 2d at 217, 125 S. Ct. at 1262.  Moreover, that determination bears little difference here to the determination of the timing and sequence of a defendant's prior convictions, which have been held to be within the purview of the trial court.  See Ligon, 365 Ill. App. 3d at 127-28, 847 N.E.2d at 780 (section 33B-1 is constitutional "because the timing and sequence of a defendant's prior convictions are inherent in the convictions themselves and need not be submitted to a jury").

The fact that defendant's first two armed-robbery convictions were not connected with the same transaction is clear from the record.  Defendant was first convicted of armed robbery in 1990, and he was sentenced to nine years in prison.  Defendant's second conviction for armed robbery occurred in 1995.  Defendant's intervening stay as a guest of the government clearly shows his convictions met the requirements of section 33B-1 of the Act.  That the qualifying offenses here were not part of the same transaction is inherent in the convictions themselves and not like a finding of serious bodily harm, as in Jones, or a racially biased purpose, as in Apprendi, that would require a

determination by a jury of defendant's peers.

We find support for this conclusion in <u>United States v. Thompson</u>, 421 F.3d 278 (4th Cir. 2005), cited by the State on appeal. There, the defendant pleaded guilty to unlawful possession of firearms. <u>Thompson</u>, 421 F.3d at 280. Under the ACCA, a defendant is subject to a minimum 15-year prison term if he has at least three prior violent felony convictions that were "'committed on occasions different from one another.'" <u>Thompson</u>, 421 F.3d at 280, quoting 18 U.S.C. §924(e)(1) (2000). The district court found the conditions applied and sentenced the defendant to 15 years in prison. <u>Thompson</u>, 421 F.3d at 280.

On appeal, the defendant argued his rights under the sixth amendment were violated when the district court, not a jury or by his own admission, found his violent felonies were committed on separate occasions. <u>Thompson</u>, 421 F.3d at 280-81. The Fourth Circuit, citing <u>Shepard</u>, found "the 'fact of a prior conviction' remains a valid enhancement even when not found by the jury." <u>Thompson</u>, 421 F.3d at 282.

In looking at whether the applicable offenses were committed on different occasions, the court of appeals noted "'occasions' are 'those predicate offenses that can be isolated with a beginning and an end--ones that constitute an occurrence unto themselves.'" <u>Thompson</u>, 421 F.3d at 285, quoting <u>United States v. Letterlough</u>, 63 F.3d 332, 335 (4th Cir. 1995). In looking at the presentence report, the court found the defendant's burglaries were committed on different occasions as they

occurred "on distinct days in separate towns in different homes." Thompson, 421 F.3d at 285. As a matter of common sense, concluding the offenses occurred on separate occasions could not be seen "to represent impermissible judicial factfinding." Thompson, 421 F.3d at 285. Instead, "[t]he data necessary to determine the 'separateness' of the occasions is inherent in the fact of the prior convictions." Thompson, 421 F.3d at 285. That determination can be made with "data normally found in conclusive judicial records." Thompson, 421 F.3d at 286.

Likewise, in the case sub judice, whether defendant's convictions were connected with the same transaction is readily ascertainable from conclusive judicial records. In looking at the charging documents and the docket sheets, we note defendant's first two armed robberies were committed over five years apart and were separated by a prison sentence imposed following the first conviction. Our conclusion that defendant's convictions were not connected cannot be seen as impermissible judicial fact finding as the separate nature of the offenses is readily apparent from the State's certified copies of the convictions. No other conclusion can be had. We also note defendant offers nothing to support a claim the convictions were related.

Here, defendant's criminal history included convictions on three Class X felonies. Defendant's second offense was committed after his first conviction. He committed his third offense after the conviction for his second offense, and the third offense occurred within 20 years of the date of judgment on

his first conviction.  Moreover, the three convictions neither resulted from nor were connected with the same transaction and were not committed at the same time.  Defendant's convictions thereby satisfied the requirements of section 33B-1 of the Act. Under these facts, we find the trial court's sentencing defendant to a life term as an habitual offender under the Act did not violate defendant's constitutional rights.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.  As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal.

Affirmed.

McCULLOUGH and MYERSCOUGH, JJ., concur.